J. O. TANKERSLEY et al., Plaintiffs-Appellants,

v.

CUMBERLAND FROZEN FOODS, INC., Defendant-Appellee.

No. 13980.

United States Court of Appeals Sixth Circuit.

Oct. 7, 1960.

A. Longstreet Heiskell, Memphis, Tenn., A. Longstreet Heiskell and Frierson M. Graves, Jr., Shepherd, Heiskell, Williams, Beal & Wall, Memphis, Tenn., on brief, for appellants.

W. Emmett Marston, Martin, Tate & Morrow, Memphis, Tenn., for appellee.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment in favor of appellee, Cumberland Frozen Foods, Inc., in the sum of $6,112.46 for damages for breach of contract made between appellee, as seller, and defendant-appellants, Tankersley, Herndon and Partee, as purchasers of a quantity of frozen strawberries. This non-jury case was tried before District Judge Marion S. Boyd of the Western District of Tennessee.

In May, 1956, appellee, hereinafter referred to as Cumberland, agreed to sell to defendants, collectively referred to hereinafter as Tankersley, and Tankersley agreed to purchase, up to 20,000 crates of frozen strawberries at an agreed price. Cumberland was to place such strawberries in the warehouse of Merchants Cold Storage Company at Louisville, Kentucky, as quantities thereof were gathered. Cumberland was to obtain non-negotiable warehouse receipts therefor, issued in the name of the First National Bank of Memphis, Tennessee, at which bank appellant Tankersley had arranged a line of credit for financing its purchase of the strawberries. Cumberland was to send a draft upon Tankersley, payable at the People's Bank of Humboldt, Tennessee, as shipments were ready for delivery. Money to pay these drafts was being made available through the First National Bank of Memphis.

An issue in the case, resolved in favor of Cumberland, was whether the agreement required that the contract price for each lot of strawberries was to be paid to Cumberland before any of them would be released or any use made of the warehouse receipts by the Memphis bank. Three different lots of berries were accumulated by Cumberland in the warehouse at Louisville, and warehouse receipts therefor delivered to the Memphis bank. A draft was forwarded by Cumberland for the first shipment, dated June 4, 1956, in the amount of $12,267.-00. This draft was paid and the berries delivered. Afterwards, it was discovered that the draft was excessive in the amount of $483.84. A second lot of berries was accumulated in the Louisville warehouse and on June 15, 1956, a draft therefor in the amount of $15,302.48 was forwarded to the bank at Humboldt.

Tankersley refused to pay this draft because a deduction therefrom had not been made for the amount of the excessive charge in the first draft. Through its own bank, Cumberland notified the Humboldt bank to deduct this excess from the second draft, and to pay it in the reduced amount. A third lot of berries was accumulated, and on June 21, Cumberland forwarded a third draft on Tankersley in the amount of $10,299.86. This draft was excessive in the amount of $100.00. Upon notice of this error, Cumberland, through its bank, notified the Humboldt bank to credit the draft with the $100.00 overcharge.

The parties and their witnesses were in sharp dispute as to just what occurred in handling the various drafts and in efforts made to have the purchase price for the berries paid. It is clear, however, that Cumberland agreed to accept the correct amount for the berries sold, either by having its drafts paid in reduced amounts or by direct payment from Tankersley to Cumberland. Invoices for the last two shipments were never paid by Tankersley, and while Cumberland was continuing with efforts to get Tankersley to pay it, Tankersley attempted to withdraw from the warehouse the berries covered by these invoices. The Memphis bank holding warehouse receipts for such berries, directed the Louisville warehouse to release them to Tankersley. The warehouse company refused at first, advising that it had received instructions not to deliver them, and then advised that it would not release the berries until storage charges had been paid. The Memphis bank paid the storage charges, but before delivery could be made, Cumberland instituted suit in Louisville seeking an injunction to prevent such delivery. A temporary injunction was obtained.

After the injunction had been issued, conversations were had between Cumberland and Tankersley and again the record presents serious dispute as to what was said or agreed to in these conversations. Cumberland's version was that Tankersley continued to refuse to pay for the balance of the berries and that Cumberland, accordingly, notified Tankersley that it would retake the berries and sell them, charging Tankersley with any resulting loss. Tankersley's version of these conversations was that a mutual cancellation was agreed upon whereby Cumberland was to take back the berries then in storage and all disputes would thus be settled. Cumberland did retake possession of and resell the undelivered berries.

To obtain the warehouse receipts from the Memphis bank, Cumberland was required to pay the storage charges which that bank had paid on the berries, as well as the amount of the excess charges made by Cumberland in its first invoices for berries received and paid for by Tankersley. The amount realized by Cumberland on resale of the berries was less than the original contract price. Cumberland's claim for damages in this action, as set forth in its bill of particulars, consisted of the following: the difference between contract price and the amount realized on the re-sale, $2,316.58; storage, $1,489.02; brokerage, $1,005.98; and expenses incurred by Cumberland in its injunction action, $1,300.88. The trial judge gave a judgment for the total of these items, $6,112.46.

■ The issues presented by the conflicting evidence of the parties were, first, whether or not Cumberland became, and was, an unpaid seller of the berries, and entitled as such to sell them for the account of Tankersley and charge it with the resulting loss. The trial court found that both as a matter of fact and of law, Cumberland was an unpaid seller, and by virtue of the applicable provisions of the Tennessee statutes (Tenn.Code Anno. §§ 47–1252, 47–1253) as such was entitled to employ the remedy invoked by it. The court likewise found that, the goods being of a perishable nature, Cumberland exercised reasonable care and judgment in making the resale (Tenn.Code Anno. § 47–1260).

■■ On a second issue, the court further found that the negotiations between the parties subsequent to the injunction suit did not amount to a mutual

rescission and cancellation of the contract, as claimed by Tankersley. Another issue was presented by Tankersley's challenge of the propriety of allowing as damages to Cumberland the expenses (including attorney fees) it incurred in the injunction suit in Louisville. The trial judge found such expenses reasonable and properly recoverable by Cumberland as an unpaid seller, holding that these items constituted loss sustained by Cumberland, directly and naturally resulting from Tankersley's breach of contract.

Judge Boyd filed Findings of Fact and Conclusions of Law covering all of the disputed issues involved in the case and resolved the questions of fact essential to recovery in favor of Cumberland, and we are satisfied that he properly applied the law to those facts. His Findings of Fact were not clearly erroneous. We are satisfied that his conclusions of law were correct.

Judgment is affirmed, with costs to appellee.