550 F.2d 1077
 21 UCC Rep.Serv. 254
 BOSSIER BANK & TRUST COMPANY, a Louisiana Corporation,
Plaintiff and Appellee, Cross-Appellant,
v.
UNION PLANTERS NATIONAL BANK OF MEMPHIS, a National Bank,
Defendant and Appellant, Cross-Appellee.
 Nos. 76-1290, 76-1291.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 31, 1977.
Decided March 7, 1977.
 
 Robert M. Johnson, Canada, Russell & Turner, Memphis, Tenn., for defendant and appellant, cross-appellee.
 Lee L. Piovarcy, Martin, Tate, Morrow & Marston, Jackson W. Moore, Memphis, Tenn., for plaintiff and appellee, cross-appellant.
 Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.
 PER CURIAM.
 
 
 1
 On June 28, 1973, Union Planters National Bank of Memphis issued a letter of credit to Bossier Bank and Trust Co. of Bossier City, Louisiana, in the amount of $450,000. The letter of credit by its terms agreed to honor sight drafts drawn on it by Bossier in the aggregate amount of $450,000. Bossier presented to Union Planters a sight draft in the amount of $450,000, which was dishonored on October 7, 1974.
 
 
 2
 Bossier thereupon filed the present suit for $450,000, plus interest and incidental damages. Jurisdiction is based upon diversity of citizenship and Tennessee law controls.
 
 
 3
 Both banks filed motions for summary judgment. In a well reasoned memorandum opinion, dated August 25, 1975, Chief District Judge Bailey Brown granted summary judgment for $450,000 against Union Planters, plus interest from October 7, 1974, the date of dishonor of the letter of credit. Judge Brown retained the case on the docket pending determination of the amount of incidental damages. Reference is made to the memorandum opinion of Judge Brown which is made Appendix A to this opinion, for a more complete recitation of facts.
 
 
 4
 Thereafter, Judge Brown referred the issue of incidental damages to the federal magistrate, who held that Bossier is not entitled to incidental damages or attorneys fees. Judge Brown affirmed the decision of the magistrate. The memorandum decision of Federal Magistrate Aaron Brown is made Appendix B hereto.
 
 
 5
 Union Planters appeals from the judgment for $450,000, plus interest. Bossier cross-appeals from the denial of incidental damages, including attorneys fees. We affirm.
 
 
 6
 As a ground for reversal, Union Planters asserts that Bossier failed to comply with a condition of an amendment to the letter of credit requiring that the sight draft must be accompanied by an assignment. The short answer to this contention is that there was no assignment. The letter of credit was issued directly to Bossier and it was never assigned.
 
 
 7
 Union Planters further contends: (1) That the statement of Bossier accompanying the sight draft differed materially from the statement required by the letter of credit; and (2) that Bossier submitted an affidavit with the sight draft which both banks knew to be false. Upon consideration of the entire record, we conclude that these contentions are without merit for the reasons stated in the memorandum opinion of Judge Brown (Appendix A hereto).
 
 
 8
 We also conclude that the District Court was correct in disallowing Bossier's claim for incidental damages and attorneys fees.
 
 
 9
 The judgment of the District Court is affirmed. No costs are taxed. Each party will bear its own costs on this appeal and cross appeal.
 
 APPENDIX A
 MEMORANDUM DECISION
 
 10
 These are cross motions for summary judgment filed on behalf of the plaintiff, Bossier Bank & Trust Company (Bossier) and the defendant, Union Planters National Bank of Memphis (U.P.). Both parties have submitted their motions supported by affidavits and memoranda of law, and oral argument to the court.
 
 
 11
 This is a diversity action based on the wrongful dishonor of a letter of credit in the amount of four hundred fifty thousand dollars ($450,000). The court finds that there are no genuine issues of material fact here.
 
 
 12
 On June 28, 1973 the defendant, U.P., issued to plaintiff, Bossier, Letter of Credit No. 10676 for the account of Shreve Square on the River, Inc. The letter of credit,[1] by its terms agreed to honor sight drafts drawn on it by Bossier in the aggregate amount of $450,000. The letter of credit also provided the following:
 
 
 13
 The draft is to be accompanied by your written statement to the effect that you are entitled to draw against this Letter of Credit in reduction of the loan made to Shreve Square on the River, Inc., pursuant to the terms of your commitment letter dated June 21, 1973.
 
 
 14
 On October 2, 1974 plaintiff presented to U.P. a sight draft in the amount of $450,000 accompanied by an affidavit[2] which stated in pertinent part:Affiant further did assert and declare that the Bossier Bank & Trust Company is entitled to draw against this said Letter of Credit in reduction of the loan made by the Bossier Bank & Trust Company to Shreve Square on the River, Inc., the said loan having been made pursuant to the terms of the commitment letter issued by Bossier Bank & Trust Company to Shreve Square on the River, Inc. under date of 21 June 1973.
 
 
 15
 On October 7, 1974 U.P. dishonored plaintiff's draft. Said dishonor prompted the instant lawsuit.
 
 
 16
 The plaintiff has filed its motion for summary judgment on the grounds that it was the beneficiary of the letter of credit, that it complied with the terms of the letter of credit and that the issuer, U.P., therefore wrongfully dishonored and is liable for the fact amount of the letter of credit plus incidental damages.
 
 
 17
 Defendant asserts in its motion that Bossier fraudulently "called" the letter of credit because the purpose for which Bossier sought to have it honored was not the purpose contemplated by the parties to the underlying contract and that if fraud is involved the issuer is not obligated to honor the drafts of the beneficiary.
 
 
 18
 The letter of credit was executed in Tennessee and performance and payment thereon was to be made in Tennessee; thus making Tennessee law controlling. Tennessee Code Annotated section 47-5-101 et seq. governs letters of credit and provides in relevant part:
 
 
 19
 47-5-109 Issuer's obligation to its customer.
 
 
 20
 (1) An issuer's obligation to its customer includes good faith and observance of any general banking usage but unless otherwise agreed does not include liability or responsibility
 
 
 21
 (a) for performance of the underlying contract for sale or other transaction between the customer and the beneficiary; or
 
 
 22
 (2) An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.
 
 
 23
 A pertinent comment to the above section provides:
 
 
 24
 The purpose of the examination is to determine whether the documents appear regular on their face. The fact that the documents may be false or fraudulent or lacking in legal effect is not one for which the issuer is bound to examine. His duty is limited to apparent regularity on the face of the documents. The duties, privileges and rights of an issuer who has received documents which are regular on their face but are in fact improper because forged or fraudulent are dealt with in Section 5-114. Comments to Official Text 2.45-5-111 Warranties on transfer and presentment.
 
 
 25
 (1) Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with. This is in addition to any warranties arising under chapters 3, 4, 7 and 8, of this title.
 
 
 26
 47-5-114 Issuer's duty and privilege to honor Right to reimbursement.
 
 
 27
 (1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. * * *
 
 
 28
 (2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (§ 47-7-507) or of a security (§ 47-8-306) or is forged or fraudulent or there is fraud in the transaction
 
 
 29
 (a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (§ 47-3-302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (§ 47-7-502) or a bona fide purchaser of a security (§ 47-8-302); and
 
 
 30
 (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.
 
 
 31
 (3) Unless otherwise agreed an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit. (Emphasis supplied.)
 
 
 32
 The letter of credit constitutes an independent contract between the issuer and the beneficiary. If the beneficiary presents to the issuer his draft accompanied by the document(s) in proper form called for in the letter of credit, the draft must be honored. See Banco Espanol de Credito v. State Street Bank and Trust Company, 385 F.2d 230 (1st Cir. 1967) cert. den. 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163; Dynamics Corporation of America v. Citizens and Southern National Bank, 356 F.Supp. 991 (N.D.Ga.1973). As stated in T.C.A. 47-5-114 the issuer must honor the draft despite a nonconformity in the underlying contract. The Comments to Official Text state in relevant part:
 
 
 33
 1. The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article (Chapter) as independent of the underlying contract between the customer and the beneficiary (See Section 5-109 and Comment thereto). In view of this independent nature of the letter of credit engagement, the issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract.
 
 
 34
 Defendant, however, invites this court to look to the underlying contract to determine the intent of the parties and the purpose for which the letter of credit was issued. U.P. asserts that the statement in the letter of credit, to wit:
 
 
 35
 That you are entitled to draw against this letter of credit in reduction of the loan made to Shreve's Square on the River, Inc. pursuant to the terms of your commitment letter dated June 21, 1973incorporates by reference one paragraph of a commitment letter of Bossier, which in turn incorporated one paragraph of the commitment letter of a third party which letters were a part of the underlying contract. The said commitment letters delineated certain conditions precedent to the calling of the letter of credit. The court cannot accept U.P.'s invitation for the reasons heretofore stated and for the further reason that U.P. drafted the letter of credit. It is fundamental that a contract is construed against the drafter. As stated earlier the letter of credit constitutes an independent contract between U.P. and Bossier. Since U.P. drafted the contract it must be construed against U.P.
 
 
 36
 U.P. in drafting the letter of credit, requested that Bossier produce a written statement to the effect that Bossier was entitled to draw on the letter of credit. Bossier submitted to U.P. an affidavit explicitly stating its entitlement to draw on the letter of credit. Bossier more than complied with the terms of the letter of credit. The court must assume that the issuer drafted the letter of credit in accordance with the directions of its customer and that if the terminology of the letter of credit was unsatisfactory to either they would have amended it accordingly.
 
 
 37
 An exception to the general rule that the issuer must honor the letter of credit when conforming documents are presented to it, comes into play when fraud is involved. U.P. seeks aid from this exception. U.P. asserts that Bossier fraudulently called the letter of credit and thus U.P. had no duty to honor same. U.P.'s contention is based on its prior argument that the underlying contract revealed that the purpose for which the letter of credit was being called was not the purpose intended by the parties. As we have previously concluded that the underlying contract should not be looked to, and that Bossier has complied with the terms of the letter of credit, we must reject defendant's fraud argument. Moreover, the type fraud contemplated in the statute is not the type fraud which the defendant asserts is present here. The Code seems to cover fraud in the factum and not fraudulently calling the letter of credit. See Comments to Official Text 2, T.C.A. 47-5-114.
 
 
 38
 In regard to the question of damages for improper dishonor, T.C.A. 47-5-115 provides that the beneficiary may recover the face amount of the letter of credit plus incidental damages. The face amount of the instant letter of credit is of course four hundred fifty thousand dollars ($450,000). Plaintiff Bossier has also prayed for seventy thousand dollars ($70,000) in incidental damages and has filed an affidavit asserting that amount. Although U.P. has not strenuously taken issue with the latter amount the court feels that plaintiff should submit further proof on the amount of incidental damages. A hearing will be set for that purpose.
 
 
 39
 Accordingly, the plaintiff's motion for summary judgment is granted and defendant's motion is denied. Defendant shall pay to plaintiff the amount of four hundred fifty thousand dollars ($450,000) plus interest from October 7, 1974. This case shall be retained on the docket pending determination of the amount of incidental damages.
 
 
 40
 ENTER this 25 day of August, 1975.
 
 
 41
 /s/ BAILEY BROWN
 
 CHIEF JUDGE
 APPENDIX B
 
 42
 IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
 
 OF TENNESSEE WESTERN DIVISION
 IN
 No. C-75-101
 
 43
 No.
 
 
 44
 BOSSIER BANK & TRUST COMPANY,
 
 
 45
 A Louisiana Corporation,
 
 
 46
 Plaintiff,
 
 
 47
 v.
 
 
 48
 UNION PLANTERS NATIONAL BANK OF MEMPHIS,
 
 
 49
 A National Bank,
 
 
 50
 Defendant.
 
 DefMEMORANDUM
 MEM
 
 51
 (Filed December 8, 1975)
 
 
 52
 Fi
 
 
 53
 In a memorandum decision of August 25, 1975 Chief Judge Bailey Brown of this court found that the defendant, Union Planters, wrongfully dishonored a letter of credit and granted the plaintiff a summary judgment for the face amount ($450,000.00) plus interest from October 7, 1974. The court also noted that T.C.A. 47-5-115 provides that the beneficiary of a letter of credit may recover incidental damages for a wrongful dishonor and, accordingly, retained the case on the docket for a determination of the amount of incidental damages due. On August 26, 1975 the court referred this question to the magistrate. Subsequently, I invited counsel to submit memoranda on what elements of incidental damages, if any, are properly recoverable by the plaintiff.
 
 
 54
 The plaintiff, Bossier Bank, claims the following incidental damages, subject to proof as to amount:
 
 
 55
 (1) Attorney's fees paid and payable in this action; (2) additional expenses and charges amounting to the difference between the interest allowed by this court and the prime rate of interest at which the $450,000.00 would have been lent to its customers during the time after which defendant Union Planters wrongfully dishonored a demand for payment of the subject Letter of Credit; (3) out-of-pocket expenses which plaintiff Bossier Bank incurred in order to recover the face amount of the Letter of Credit.
 
 
 56
 The defendant disputes that these are appropriate elements of damages in this case.
 
 
 57
 The general American rule is that attorneys' fees are not recoverable as damages without statutory authority or a contractual agreement. 22 Am.Jur.2d Damages, § 165. This rule has recently been affirmed in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and is the rule under Tennessee law. Thayer v. Wright Co., 50 Tenn.App. 515, 362 S.W.2d 805 (1972). The plaintiff does not dispute that this is the general American and Tennessee rule, but rather contends that the present case falls within the statutory-authority exception. The plaintiff maintains that T.C.A. 47-5-115 and T.C.A. 47-2-710 provide the necessary statutory authority.
 
 
 58
 T.C.A. 47-5-115 says that when an issuer wrongfully dishonors a letter of credit the beneficiary may recover "the face amount of the draft or demand together with incidental damages under § 47-2-710 on seller's incidental damages and interest but less any amount realized by resale or other use or disposition of the subject matter of the transaction". T.C.A. 47-2-710 provides the following:
 
 
 59
 Sellers incidental damages. Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach. (sic)
 
 
 60
 The official comment to 47-2-710 says this:
 
 
 61
 Purposes : To authorize reimbursement of the seller for expenses reasonably incurred by him as a result of the buyer's breach. The section sets forth the principal normal and necessary additional elements of damage flowing from the breach but intends to allow all commercially reasonable expenditures made by the seller. (sic)
 
 
 62
 Nowhere in either of these statutes are attorneys' fees specifically mentioned. I cannot read T.C.A. 47-2-710 as authorizing a break with the traditional American rule concerning the award of attorney's fees as damages. Had the drafters of the Uniform Commercial Code intended attorneys' fees to be included as incidental damages, they could easily have mentioned them and no doubt would have, since the exclusion of attorneys' fees is such a well known exception to the general rule of damages.
 
 
 63
 The plaintiff makes much of the fact that the use of the letter of credit in the present case is not a typical use of a letter of credit. In the typical situation, a letter of credit is used in connection with the purchase of goods, and the statutes concerning damages for wrongful dishonor appear to anticipate that use. But attorneys' fees could just as well be incurred by a seller of goods in enforcing a letter of credit as they were incurred by the plaintiff in this case. I do not see how the fact that the use of the letter of credit in this case was unusual would entitle the plaintiff to attorney's fees under 47-2-710.
 
 
 64
 The court cannot award the plaintiff attorneys' fees just because it might not have suffered some of the damages a seller of goods would have suffered from a similar breach any more than the court can throw in attorneys' fees for a quick-recovering wreck victim because he did not die like another victim of the same accident.
 
 
 65
 The plaintiff cites as authority for its claim of attorneys' fees the Sixth Circuit case of Tankersley v. Cumberland Frozen Foods, Inc., 282 F.2d 636 (6th Cir. 1960). Tankersley did involve an award of some attorneys' fees, but the case is not in point with the present one. In Tankersley the purchaser's breach caused the seller to get in a lawsuit with a third party. The attorneys' fees incurred in the suit with the third party were the ones awarded the seller, and not those incurred in the suit by the seller against the purchaser. It is a well recognized exception to the American rule that where the wrongful act of the defendant has involved the plaintiff in litigation with others, attorneys' fees incurred in such litigation may be recovered as damages. Restatement of Contracts, § 334. 22 Am.Jur.2d Damages, § 166. This is not the situation in the present case.
 
 
 66
 I conclude that the plaintiff is not entitled to collect attorneys' fees from this defendant.
 
 
 67
 The courts awarded the face amount of the letter of credit "plus interest from October 7, 1974". T.C.A. 47-14-104 provides for interest at six percent, absent a contract providing otherwise. The plaintiff claims, however, that it is entitled to the difference between the statutory interest allowed by the court and the rate at which the $450,000.00 could have been lent to plaintiff's customers from the time of the wrongful dishonor of the letter of credit.
 
 
 68
 T.C.A. 47-5-115 specifically provides for both interest and incidental damages. In effect, the plaintiff claims that it is entitled to additional interest as incidental damages. T.C.A. 47-2-710, to which 47-5-115 refers for incidental damages, makes no mention of additional interest as "sellers incidental damages". It is true that the plaintiff is in the business of lending money and was deprived of the use of part of its inventory by the defendant's wrongful dishonor of the letter of credit. But, here again, the plaintiff is not in a different situation from that of a seller of goods who suffers a similar wrongful dishonor. The seller of goods is also deprived of the use of money, which money could ordinarily be used to earn more than the statutory interest rate. Since 47-5-115 specifically mentions both interest and incidental damages, and refers the reader to 47-2-710 for further elaboration on incidental damages, I do not think it reasonable to read 47-2-710 as including in "incidental damages" interest in addition to that provided by 47-5-115.
 
 
 69
 I therefore conclude that the additional interest sought by the plaintiff is not a proper element of damages.
 
 
 70
 Finally, the plaintiff seeks out-of-pocket expenses incurred in recovering the face amount of the letter of credit. These are additional litigation expenses which I likewise think are not proper elements of incidental damages. It may be that certain items in this category should be taxed as court costs under 28 U.S.C. § 1920, but that should be submitted to the clerk in the customary manner.
 
 
 71
 I find that the elements of incidental damages sought by the plaintiff are not recoverable as a matter of law, and therefore no evidentiary hearing to determine amounts is called for.
 
 
 72
 Submitted this, the 8th day of December, 1975.
 
 
 73
 /s/ AARON BROWN, JR.,
 
 UNITED STATES MAGISTRATE
 
 
 [1]
 The letter of credit and amendments thereto state in their entirety:
 "We hereby establish our Irrevocable Letter of Credit No. 10676 in your favor, for account of Shreve Square on the River, Inc., and thereby undertake to honor your drafts at sight on us, not exceeding in the aggregate Four Hundred Fifty Thousand and no/100 U.S. Dollars.
 The draft is to be accompanied by your written statement to the effect that you are entitled to draw against this Letter of Credit in reduction of the loan made to Shreve Square on the River, Inc., pursuant to the terms of your commitment letter dated June 21, 1973. However, at such time as Shreve Square on the River, Inc., has achieved a gross annual rental income of $220,000.00 you shall cancel and release us from this Letter of Credit.
 This Letter of Credit is valid until November 1, 1977 and drafts drawn hereunder, if accompanied by document specified above, will be honored if presented to us at our main banking office at 67 Madison Avenue, Memphis, Tennessee, on or before that date.
 Your drafts must be marked on their face that they are drawn under Union Planters National Bank Irrevocable Letter of Credit No. 10676 dated June 28, 1973.
 Amendment No. 1.
 This Letter of Credit is made transferrable in part, or full, a copy of the assignment must accompany any and all drafts drawn under this Letter of Credit.
 Amendment No. 2.
 This Letter of Credit shall be returned to Union Planters National Bank of Memphis, Tennessee at such time that Bossier Bank and Trust, Bossier City, Louisiana receives a letter from Tri South Mortgage Investors stating their approval of leases in the amount of $220,000 and that the letter of credit is no longer required by Tri-South.
 
 
 [2]
 The affidavit stated in its entirety:
 State of Louisiana
 Parish of Bossier:
 BEFORE ME, the undersigned authority, a Notary Public duly commissioned, qualified and acting in and for the Parish of Bossier, State of Louisiana, personally came and appeared ROBERT L. TAYLOR, who after being duly sworn, did depose and state:
 That he is the President of Bossier Bank & Trust Company, Bossier City, Louisiana, and as such is duly authorized to make this affidavit; that attached to this affidavit is a draft in favor of Bossier Bank & Trust Company on the Union Planters National Bank of Memphis in the amount of $450,000; that this draft, as is marked on the face thereof, is drawn under Union Planters National Bank Irrevocable Letter of Credit Number 10676 dated June 28, 1973; affiant further did assert and declare that the Bossier Bank & Trust Company is entitled to draw against this said Letter of Credit in reduction of the loan made by the Bossier Bank & Trust Company to Shreve Square on the River, Inc., the said loan having been made pursuant to the terms of the commitment letter issued by Bossier Bank & Trust Company to Shreve Square on the River, Inc. under date of 21 June 1973.
 BOSSIER BANK & TRUST COMPANY
 By /s/ Robert L. Taylor, President
 Robert L. Taylor, President
 SWORN TO AND SUBSCRIBED before me, Notary, on this 2nd day of October, 1974.
 /s/ Rebecca K. Caple
 /s/ NOTARY PUBLIC
 My commission is for life.