762 F.2d 1005
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BANCO CONTINENTAL, PLAINTIFF-APPELLEE,
v.
FIRST NATIONAL BANK OF GATLINBURG DEFENDANT-APPELLANT AND
DOUGLAS HEINSOHN, INTERVENOR-APPELLANT.
 NO. 84-5378
 United States Court of Appeals, Sixth Circuit.
 4/30/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: MERRITT, KENNEDY and WELLFORD, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 This is an action for payment under a letter of credit. Defendant issuer bank, First National, at the instruction of intervening defendant customer Heinsohn, refused to honor a letter of credit presented to it by the bank of the beneficiary of the letter of credit. The beneficiary was Gallo Nunez, an Ecuadorian citizen doing business as Stella Maris; Nunez is not a party to this suit. Plaintiff, Banco Continental, is the beneficiary's bank in Ecuador.
 
 
 2
 The United States District Court for the Eastern District of Tennessee, having diversity jurisdiction under 28 U.S.C. Sec. 1332(a)(2), held that (1) under Tenn. Code Ann. Sec. 47-5-114(1), the issuer bank was obligated to honor the letter of credit provided only that the documents required by the letter of credit conformed to terms; and (2) that plaintiff, Banco Continental, was a holder in due course of the documents which entitled Nunez to payment under the letter of credit. The bank, therefore, took free of any of the defenses allowed in Tenn. Code Ann. Sec. 47-5-114(2) against one who is not a holder in due course.
 
 
 3
 Judgment was awarded for the plaintiff in the amount of $195,597.50, for the principal of the three drafts presented for payment; $25,687.50 as interest provided by Tenn. Code Ann. Sec. 47-14-103(3); and $6,650.00 incidental damages for telephone, telex, banking and travel expenses under Tenn. Code Ann. Sec. 47-5-115(1). Defendant's motion for a new trial was denied and this appeal ensued.
 
 I.
 
 4
 Heinsohn is a Gatlinburg doctor who decided to invest in the shrimp exporting business in 1980. He travelled to Ecuador to investigate the field and entered into a partnership arrangement with Nunez. They built a shrimp processing plant in Ecuador and began producing and exporting shrimp from Ecuador to the United States.
 
 
 5
 To facilitate the international financing of the partnership operation, in October 1982, Heinsohn arranged for the First National Bank of Gatlinburg to issue irrevocable letters of credit to Banco Continental. The letters of credit named Nunez as the beneficiary.
 
 The letter of credit provided:
 
 6
 We hereby notify you of our irrevocable letter of credit NBR 1002. Aggregate amount of $300,000.00. Funds under this letter will be available against your tested telex (between Banco Continental and American Express New York) stating that all credit terms have been complied with and that you have in your possession all required documents. These documents are to be forwarded to us in a single cover by airmail.
 
 Required documents are:
 
 7
 1. Full set of clean on board airway bill of lading
 
 
 8
 2. Beneficiarys signed commercial invoices in duplicate (2)
 
 
 9
 3. Beneficiarys signed guarantee that shipment will pass USDA inspection.
 
 
 10
 4. Insurance policy of certificate for 100 full invoice value convering all risks.
 
 Covering shipment of:
 
 11
 Fresh frozen shrimp, headless shell on and/or peeled and deveined, all shrimp must be processed at beneficiarys plant and must be packaged in wonder shrimp boxes, bags and cartons.
 
 
 12
 All freight to be paid by beneficiary to Miami Florida partial shipments are permitted.
 
 
 13
 The letter also stated the price of the shrimp, that Stella Maris (Nunez) was the beneficiary, and that the shrimp were to be consigned to Heinsohn. It was understood that upon receipt of the documents, Banco Continental would deposit payment for the shipment in Nunez's account, and then draw on the irrevocable letter of credit from First National to cover the payment.
 
 
 14
 On November 9, 1982, Nunez made a shipment of shrimp to Heinsohn. Nunez submitted to Banco Continental the four documents specified in the letter of credit; Banco Continental sent the documents to First National, but because they were written in Spanish, First National had heinsohn approve the documents for payment to Banco Continental. Heinsohn, who is fluent in Spanish, approved the documents for the November 9, 1982, shipment and First National paid Banco Continental.
 
 
 15
 Nunez made shipments of shrimp to Heinsohn on November 16, November 23, and December 7, 1982. The shrimp were sent by air; they arrived in Miami before the documents were received by First National. Heinsohn learned that the shrimp were spoiled, packed in dirty water, and generally defective. He then instructed First National to refuse payment on the documents of these three shipments. First National denied Banco Continental's demand for payment, although the documents submitted for these three shipments were in substantially the same form as the documents for the earlier November shipment, which First National had honored.
 
 
 16
 Banco Continental first tried to obtain payment by making inquiries of First National and by using the services of Citibank of New York to collect the payments. When this route was unavailing, the bank filed suit in the Eastern District of Tennessee.
 
 II.
 
 17
 The parties agree that Tennessee law governs the resolution of this case. See Bossier Bank & Trust Company v. Union Planters National Bank of Memphis, 550 F.2d 1077 (6th Cir. 1977). The parties also agree that although letters of credit transactions are considered as essentially separate from the underlying contracts, see Tenn. Code Ann. Sec. 47-5-114(1)(1979),[1] letters of credit arrangements are contractual in nature and parties therefore can alter the general rule by incorporating the underlying contract into a letter of credit if they choose. CNA Mortgage Investors, Ltd. v. Hamilton National Bank, 540 S.W.2d 238, 242 (Tenn. App. 1975).
 
 
 18
 The District Court found that First National refused to honor the demands for payment because the shrimp were defective. There is no real dispute that the four documents required by the letter of credit were in fact submitted to First National in proper form.
 
 
 19
 Defendants argue on appeal, however, that the parties intended to incorporate the underlying contract into the letter of credit by reference to 'fresh frozen shrimp.' Defendants argue that this phrase imported into the letter of credit agreement the requirement that the shrimp be fresh; failure of this requirement would then negate First National's duty to honor the letter of credit.
 
 
 20
 We hold that the mere inclusion of the descriptive phrase 'fresh frozen shrimp' did not incorporate the underlying contract into the letter of credit. The touchstone of letter of credit law is that 'the issuer is a purchaser of documents only, obligated to pay if the specified documents are received without reference to the changing status or desires of the buyer and seller. . . .' Banco Nacional de Desarrollo v. Mellon Bank, N.A., 726 F.2d 87, 91 (3d Cir. 1984). In order to alter the customary status attached to letter of credit transactions, the parties must manifest a clear intent to incorporate underlying contractual conditions into the letter of credit. The simple descriptive phrase 'fresh frozen shrimp' does not suffice to prove this intent. Thus, the District Court correctly held that section 47-5-114(1) requires that First National honor Banco Continental's demands for payment.
 
 III.
 
 21
 The District Court also found that Banco Continental was a holder in due course of the instruments that entitled the bank to payment under the letter of credit; namely, the bill of lading, beneficiary's signed invoices, beneficiary's signed guarantee that shipment will pass USDA, and insurance policy of certificate for full invoice value covering all risks.[2] To qualify for holder in due course status, Banco Continental must have 'take[n] the instruments (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.' Tenn. Code Ann. Sec. 47-3-302 (1979). The District Court held that Banco Continental had satisfied these requirements and had established its status as a holder in due course. We hold that the District Court's findings on this issue are not clearly erroneous.
 
 
 22
 Defendants argue that the evidence concerning whether Banco Continental actually gave value for the instruments is unsupported and cannot sustain the finding.
 
 
 23
 The evidence consisted of testimony by an officer of Banco Continental, Mr. Pena, who testified that the bank advanced funds to the beneficiary's account upon presentation of the four documents required by the letter of credit. This evidence was uncontradicted. The District Court had the opportunity to judge the witness' demeanor and credibility. Based on the record, we do not find that the District Court's findings are clearly erroneous.
 
 
 24
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Tenn. Code Ann. Sec. 47-5-114 Issuer's duty and privilege to honor--Right to reimbursement provides in full:
 (1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.
 (2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required documents does not in fact conform to the warranties made on negotiation or transfer of a document of title (Sec. 47-7-507) or of a security (Sec. 47-8-306) or is forged or fraudulent or there is fraud in the transaction:
 (a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Sec. 47-3-302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Sec. 47-7-502) or a bona fide purchaser of a security (Sec. 47-8-302); and
 (b) in all other cases as against the customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.
 (3) Unless otherwise agreed an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit. [Acts 1963, ch. 8, Sec. 1 (5-114).]
 
 
 [2]
 Section 47-5-114(2) provides three exceptions to an issuer's general duty to honor a credit, which can be asserted only if the party making the demand is not a holder in due course. The issuer may lawfully refuse honor if (1) the required document does not conform to the warranties made on negotiation or transfer of a document of title or a security; (2) the required document is forged or fraudulent; or (3) there is fraud in the transaction. Tenn. Code Ann. Sec. 47-5-114(2) (1979). Thus, assuming that defendants could defeat the plaintiff's asserted holder in due course status, these defenses would be available