**SECURITY FINANCE GROUP, INC., Benz General Partnership # 1, and JAG General Partnership No. 1, Plaintiffs–Appellants,**

v.

**NORTHERN KENTUCKY BANK AND TRUST, INC., Defendant–Appellee.**

No. 87–5823.

United States Court of Appeals,
Sixth Circuit.

Argued May 16, 1988.

Decided Sept. 23, 1988.

James E. Cooper, Gray, Woods and Cooper, Ashland, Ky., Yale L. Goldberg (argued) Rockville, Md., for plaintiffs-appellants.

Richard A. Getty (argued), Frost & Jacobs, Lexington, Ky., David C. Horn, Frost & Jacobs, Cincinnati, Ohio, for defendant-appellee.

Before KEITH and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Appellant, Security Finance Group, Inc. ("Security Finance"), a lending institution, brought an action to enforce several letters of credit against the appellee, Northern Kentucky Bank and Trust, Inc. ("Northern Kentucky"). At issue on appeal is the district court's holding that the documents are unenforceable guaranties rather than valid letters of credit.

The conduct behind this litigation involved a number of banks and an apparently illicit link between Northern Kentucky's president and one of its customers. In July 1982 an organization known as Mineral Associates Limited Partnership ("MALP") contacted Security Finance about lending money to a man named Thomas J. Rhein. After learning its loans would be secured by letters of credit issued by Northern Kentucky, Security Finance agreed and by November 1982 it had made Rhein four loans totalling over $448,000.

Each loan was secured by a document signed by Northern Kentucky's president, Enzweiler, purporting to be a letter of credit, which included the following language:

> We hereby open our *irrevocable letter of credit* to your favor for the account of Thomas J. Rhein ... for the sum of ... $114,224.00 ... outstanding on any date available by your demand.

> Your demand letter must certify to us that the sums of money due and owing, as per the Promissory Note attached hereto, have not been paid, and that said sum is due and owing to you from [Rhein and his companies].... Said demand letter shall be accompanied by the ... Promissory Note endorsed to the order of the Bank (without recourse).

The demand letter shall contain the following clause:

> This demand is made for payment on your Letter of Credit No. 7 dated August 6, 1982.

> We agree that a demand letter drawn in accordance with the terms as stipulated herein will be duly honored by us upon presentation and delivery of the documents specified above, if presented on or before the expiration date herein at 12:00 p.m. on November 30, 1983. We understand that *this letter of credit* is issued as an inducement to Mineral Associates Limited Partnership ... to make a loan to [Rhein] as evidenced by said Note, and as inducement to Security Finance Group, Inc., to make a loan to Mineral Associates Limited Partnership....

(Emphasis added).

By March 1983 Security Finance had been unable to obtain payment from Rhein, and it presented these documents to Northern Kentucky. In response, denying that it was bound under the arrangement, the bank claimed it had lost millions of dollars as a result of a fraudulent scheme between its president, Enzweiler, and Rhein.

Northern Kentucky alleged that Rhein was able to obtain credit in spite of his worthless financial ˌstatus because Enzweiler approved loans or letters of credit for him without notifying the bank's board of trustees. As to Security Finance's purported letters of credit, Northern Kentucky claimed they were void as illegal guaranties and, in any event, were unenforceable because the loans to Rhein exceeded the statutory limit a bank could lend one customer under Ky.Rev.Stat.Ann. § 287.280 (Michie/Bobbs–Merrill Supp.1986).[1]

Security Finance, in turn, brought this diversity action in federal court to enforce its rights under the documents, which it claimed were letters of credit. The bank made a counterclaim against appellant on the basis of alleged fraud. The district court concluded that the documents were not letters of credit because there was no evidence that Northern Kentucky received any benefit from Rhein for issuing the statements.[2] Because it found receipt of a benefit by the issuer to be an essential requirement, the district court concluded that the letters were guaranties to pay the debt of another, an arrangement which is illegal under federal regulations and therefore unenforceable. 12 C.F.R. § 32.1(d). As an additional basis for this decision, the district court stated the letters were void under Kentucky law because the amount Northern Kentucky promised on behalf of Rhein exceeded 20% of its capital. Ky.Rev. Stat.Ann. § 287.280. This appeal followed.

■ The relationship among the parties is governed by Kentucky law. That state has adopted Article 5 of the Uniform Commercial Code, governing the creation and effectiveness of letters of credit. Ky.Rev. Stat.Ann. §§ 355.5–101 to 5–117. The pertinent provisions of Article 5 apply to "a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment." *Id.* § 355.5–102(1)(a). A "credit" is defined as "an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." *Id.* § 355.5–103(1)(a).

■ The question of whether the documents issued by Northern Kentucky fall within the scope of Article 5, as adopted in Kentucky, is crucial to the outcome of this case. If the documents are determined to come within the definition of a "credit," the issuer must pay the obligation without regard to any defects in the underlying agreements among the parties involved. *Id.* § 355.5–114(1). If the letters are not within the Act's coverage, they are illegal and unenforceable under both state and federal law. 12 C.F.R. § 32.1(d); Ky.Rev. Stat.Ann. § 287.280; *Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131 (10th Cir. 1984), *reversed on other grounds*, 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986). We first recognize that Kentucky courts have not spoken on this matter. We therefore look to decisions from other jurisdictions as a guide in our determination as to whether Kentucky courts would find the documents to fall within the scope of Article 5.[3]

---

1. **Maximum debt of persons to bank or trust company.**—(1) No bank or trust company shall permit any person to become indebted to it or to become obligated as guarantor or surety to it in an amount exceeding twenty per cent (20%) of its capital stock actually paid in and its actual amount of surplus.... Ky.Rev.Stat.Ann. § 287.280(1) (Michie/Bobbs–Merrill Supp.1986).

2. At the same time, the district court denied Security Finance's motion for summary judgment, and Northern Kentucky then voluntarily dismissed its counterclaim.

3. The documents at issue here can be held valid only as "standby letters of credit." This is a device by which a bank will promise to pay a customer's debt in the event he defaults, as long as proper documentation is provided. The arrangement is legal under Article 5. *Philadelphia Gear Corp.*, 751 F.2d 1131; *Temtex Products, Inc. v. Capital Bank & Trust Co.*, 623 F.Supp. 816 (M.D.La.1985), *aff'd without opinion*, 788 F.2d 1563 (5th Cir.1986); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–1 (2d ed. 1980). The only difference between this arrangement and an illegal guaranty is in the method of demanding payment. A standby letter of credit requires only the correct documentation while a guaranty requires actual proof of default. *Philadelphia Gear Corp.*, 751 F.2d at 1135.

■ The district court was unwilling to find these documents to come within the Kentucky definition of a letter of credit because the court believed a crucial requirement was absent in that Rhein had no contract with Northern Kentucky regarding their issuance.[4] While it is true that ordinarily such an underlying contractual arrangement exists in this type of situation, *e.g., Temtex Products, Inc. v. Capital Bank & Trust Co.,* 623 F.Supp. 816, 819 (M.D.La.1985), *aff'd without opinion,* 788 F.2d 1563 (5th Cir.1986), the proper method of analysis requires only that the court examine the face of the document itself.

The statute requires a purported credit to be an engagement that the issuer will honor drafts upon production of the documents specified in the credit. Ky.Rev. Stat.Ann. §§ 355.05–102(1)(b), 355.5–103(1)(a). When these requirements are present, every court which has faced the issue has found the documents to be valid letters of credit; indeed, some have found coverage based only on the fact that the document referred to itself as a "letter of credit." *See, e.g., Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224, 1228 (5th Cir.1973), *cert. dismissed,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *East Bank of Colorado Springs v. Dovenmuehle, Inc.,* 196 Colo. 422, 589 P.2d 1361 (1978); *Housing Securities, Inc. v. Maine National Bank,* 391 A.2d 311 (Me. 1978); *New Jersey Bank v. Palladino,* 77 N.J. 33, 389 A.2d 454 (1978); *O'Grady v. First Union National Bank,* 296 N.C. 212, 250 S.E.2d 587 (1978). Although no Kentucky case has addressed this question, we believe the above cited decisions are persuasive authority on the issue. Because the documents issued to Security Finance meet these requirements, we believe that Kentucky appellate courts would hold them to be valid credits.

There are important policy reasons for upholding the validity of the documents without reference to the underlying agreements. The letter of credit's primary value to the financial world is its reliability. Without it, a borrower requesting a loan from an institution unfamiliar with him would be unable to obtain funds. In such a situation, the lender must rely on the credit instrument to ensure that payment will be made. *See, e.g., Bossier Bank & Trust Co. v. Union Planters National Bank,* 550 F.2d 1077, 1081–82 (6th Cir.1977). Emphasis of the underlying arrangements instead of the document itself, as done by the district court in this case, undermines the security and reliability of the letter of credit by making payment contingent upon relationships unknown to a lender or to a party relying upon it. If the lender may not rely on the strength of the document itself, the letter of credit becomes unreliable and therefore worthless. *See generally* J. White & R. Summers, *supra,* §§ 18.1, 18.2. These considerations have prompted courts to uphold the credit's validity in the face of claims that the issuing bank was misled into issuing the letter, or that it received no consideration. *Barclays Bank,* 481 F.2d 1224; *Schweibish v. Pontchartrain State Bank,* 389 So.2d 731 (La.Ct.App.1980).

Policy considerations have also prompted courts to uphold the financial device despite claims of underlying illegality, such as the lending limits imposed by Ky.Rev. Stat.Ann. § 287.280. Because the lender normally has no knowledge of such information, courts have held that the credit must be honored. *See Prudential Insurance Co. v. Marquette National Bank,* 419 F.Supp. 734, 736 (D.Minn.1976) (credit valid despite fact credit arrangement illegal under state law); *First American National Bank of Iuka v. Alcorn, Inc.,* 361 So.2d 481, 488–89 (Miss.1978) (credit valid despite fact that lending limits of 12 U.S.C. § 84 exceeded). Northern Kentucky has alleged Security Finance was in league with Enzweiler and Rhein, and this claim is still pending. If these allegations are proven true, Security Finance will no doubt have to disgorge its profits or be liable in damages. *See Dynamics Corp. v. Citizens & Southern National Bank,* 356 F.Supp. 991 (N.D.Ga.1973); *O'Grady v. First Union National Bank,* 296 N.C. 212, 250 S.E.2d

---

**4.** The district court neglected to discuss the fact that a bank issuing a letter of credit is entitled to recompensation from its customer. Ky.Rev. Stat.Ann. § 355.5–114(3).

587 (1978). The strong case authority, the language of the statute, and policy considerations all compel us to uphold the letters of credit at issue here.

For the reasons set forth above, we RE-VERSE the decision of the district court.