902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SIGNAL CAPITAL CORPORATION, Plaintiff-Appellant,
v.
FIRST NATIONAL BANK OF GATLINBURG, Defendant-Appellee.
 No. 89-5760.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges; and AVERN COHN, District Judge.*
 GUY, Circuit Judge.
 
 
 1
 Plaintiff, Signal Capital Corporation (Signal),[1] appeals from a district court order denying the plaintiff's claim for recovery under a $200,000 irrevocable letter of credit issued by defendant First National Bank of Gatlinburg (First National). Because we conclude that First National had an obligation to pay Signal under the letter of credit pursuant to Signal's 1988 demand for payment, we reverse.
 
 I.
 
 2
 In January of 1984, Equilease Corporation (Equilease) agreed to lend $760,000 to Trotter Development Company (Trotter Company), a Tennessee partnership doing business as "River Terrace Resort." The parties drew up a loan and security agreement stating the terms of the $760,000 loan; representatives of Equilease and Trotter Company executed the loan agreement on January 23, 1984. (App. at 10-12). A Trotter Company partner contemporaneously signed a $1,286,570 promissory note in favor of Equilease providing for 84 monthly payments of $15,316.31. (App. at 13). In addition to the promissory note, Equilease received security in the form of a $200,000 transferable, irrevocable letter of credit issued by First National on January 24, 1984.[2] (App. at 14). The letter of credit appropriately named "Equilease Corporation" as the beneficiary, but listed "Trotter Development Corporation, d/b/a River Terrace Resort" (Trotter Corporation) as the applicant.[3] The letter of credit states as follows:
 
 
 3
 We hereby issue this Letter of Credit in your favor available by your draft drawn on us bearing the clause: "on sight drawn under First National Bank of Gatlinburg Letter of Credit # 101 accompanied by the following documents: 1) a signed statement by you or your transferee that Trotter Development Corporation is in default."
 
 
 4
 (App. at 14) (emphasis added). Equilease disbursed the $760,000 loan proceeds through a check drawn by Equilease to the order of First National and Trotter Company, but Trotter Corporation endorsed the disbursement check and First National allocated the loan proceeds through several cashier's checks naming Trotter Corporation as remitter.
 
 
 5
 Soon after entering into the lending arrangement with Equilease, Trotter Company defaulted on its payment obligation and filed for protection under Chapter 11 of the Bankruptcy Code. On April 23, 1984, Equilease sent a letter to First National notifying the bank of Trotter Company's default and requesting payment of the entire $200,000 under the letter of credit. (App. at 15). First National, noting the difference between Trotter Corporation (named in the letter of credit) and Trotter Company (named in Equilease's demand), refused to furnish Equilease with any funds under the letter of credit. Equilease mailed First National a second demand for payment on April 4, 1985 (App. at 16), but again was rebuffed.
 
 
 6
 In September of 1986, Equilease assigned its interest in the letter of credit to plaintiff Signal. Signal then sent a demand for payment to defendant First National on February 2, 1988. (App. at 19). Signal's letter stated that "Trotter Development Corporation is in default." Signal's attorney sent a follow-up letter to the bank's attorney explaining that Trotter Corporation's charter had been revoked (App. at 21-22), prompting First National to refuse to disburse any funds under the letter of credit since documents accompanying Signal's follow-up letter suggested that Trotter Corporation had no outstanding obligation to Equilease or Signal on which it could have defaulted. By 1988, therefore, demands had been made based upon the alleged defaults of both Trotter Company and Trotter Corporation, which were no longer viable entities. Nevertheless, First National refused to honor Signal's demand under the letter of credit because "there [was] no default to Equilease Corporation by Trotter Development Corporation." (App. at 200).
 
 
 7
 Plaintiff Signal filed this action against First National on April 6, 1988, seeking reformation of the letter of credit as well as damages for wrongful dishonor and breach of the duty of good faith and fair dealing.[4] The district court subsequently conducted a bench trial and issued findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a). (App. at 29-53).[5] Specifically, the district court held that First National was justified in rejecting Equilease's 1984 and 1985 demands because they improperly referred to Trotter Company's default. The court further reasoned that Signal's 1988 demand, which technically complied with the letter of credit's conditions by referring to "Trotter Development Corporation," did not trigger First National's payment obligation because separate correspondence sent to First National's attorney indicated that Trotter Corporation owed nothing to either Signal or Equilease, and therefore could not possibly be in default with respect to either Signal or Equilease despite Signal's assertion to the contrary in its demand. Finally, the district court refused to reform the letter of credit by substituting Trotter Company for Trotter Corporation absent clear evidence of mutual mistake, which the district court could not find. Thus, the district court entered judgment for the defendant, thereby denying Signal's claim on the letter of credit. Plaintiff Signal appealed each of these three determinations reached by the district court. Because we reject the district court's interpretation of First National's obligation under the letter of credit, we shall confine our analysis to the district court's disposition of the two issues concerning the letter of credit as drafted.
 
 II.
 
 8
 We find no merit in the plaintiff's contention that First National was obligated to provide payment under the letter of credit in response to Equilease's demands. Both of the Equilease demands referred to the default of "Trotter Development Company" (App. at 15-16), whereas the letter of credit mandated notice "that Trotter Development Corporation is in default." (App. at 14). Tennessee law specifies that an obligation under a letter of credit "written in clear and unmistakable language ... may be enforced only in accordance with its terms." Chilton Air Cooled Engines, Inc. v. First Citizens Bank of Hohenwald, 726 S.W.2d 526, 530 (Tenn.Ct.App.1986). Neither of the Equilease demands satisfied the clear requirements of the letter of credit at issue. Accordingly, First National acted within its authority in denying Equilease's demands, see id. at 529-30; see also Beyene v. Irving Trust Co., 762 F.2d 4, 6 (2d Cir.1985) (holding that misspelled name "was a material discrepancy that entitled [the bank] to refuse to honor the letter of credit"); Signal cannot assert a right to recovery from First National based upon the bank's denial of Equilease's requests for payment in 1984 and 1985.
 
 III.
 
 9
 Signal's 1988 demand, which satisfied the terms for recovery under the letter of credit, was deemed insufficient by First National solely because of information that the bank's attorney gleaned from documents other than the demand itself. Tennessee law, however, states that "[a]n issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." TENN.CODE ANN. Sec. 47-5-114(1) (Supp.1989). Therefore, "[i]t is the delivery of documents to the bank, and nothing about the validity of the underlying transaction[,] that controls payment by the bank." CNA Mortgage Investors, Ltd. v. Hamilton Nat'l Bank, 540 S.W.2d 238, 240 (Tenn.Ct.App.1975); accord Bossier Bank & Trust Co. v. Union Planters Nat'l Bank of Memphis, 550 F.2d 1077, 1081 (6th Cir.1977) (applying Tennessee law). These unequivocal statutory and judicial pronouncements seemingly foreclosed First National from repudiating Signal's technically proper demand for payment. See, e.g., Union Export Co. v. N.I.B. Intermarket, A.B., --- S.W.2d ----, ---- (Tenn.1990) ("Under the general rule the issuer must honor the draft when the documents presented comply with the terms of the letter of credit." (emphasis in original)). Nevertheless, the district court accepted the bank's explanation that additional documents sent with Signal's follow-up letter alerted the bank to inaccuracies that appeared in Signal's demand, and therefore justified the bank's refusal to honor Signal's demand. We disagree. The district court's in pari materia reading of the 1988 demand and the follow-up letter cannot be squared with the established law of Tennessee. As the Tennessee Court of Appeals has explained, "the terms of the letter of credit control. The documents are supreme." CNA Mortgage, 540 S.W.2d at 242. Therefore, "if the documents construed most favorably to the Defendants do not call for consideration of the underlying transaction," which the letter of credit in this case clearly does not do, then the plaintiff is entitled to prevail. Id.; see also Security Finance Group, Inc. v. Northern Kentucky Bank and Trust, Inc., 858 F.2d 304, 306 (6th Cir.1988) ("If the documents are determined to come within the definition of a 'credit,' the issuer must pay the obligation without regard to any defects in the underlying agreements among the parties involved."), clarified, 875 F.2d 529 (6th Cir.1989).
 
 
 10
 The statutory exception purportedly justifying denial of Signal's facially sufficient demand--the fraud exception set forth in Tenn.Code Ann. Sec. 47-5-114(2)--affords the defendant no help.[6] The First Circuit has argued, correctly we think, that courts must "interpret th[is] 'fraud' provision narrowly."[7] Itek Corp. v. First Nat'l Bank of Boston, 730 F.2d 19, 24 (1st Cir.1984). A narrow interpretation of Tenn.Code Ann. Sec. 47-5-114(2) is imperative because "[t]he letter of credit's primary value to the financial world is its reliability." Security Finance, 858 F.2d at 307. We note that the statute at issue "seems to cover fraud in the factum and not fraudulently calling the letter of credit." Bossier Bank, 550 F.2d at 1082. Even assuming that the fraud cited by First National to deny Signal's demand falls within the purview of Tenn.Code Ann. Sec. 47-5-114(2), Signal still is entitled to recover under the letter of credit unless it "ha[d] no plausible or colorable basis ... to call for payment of the letters." Itek, 730 F.2d at 25. Because the letter of credit refers only to Trotter Corporation's "default" in the abstract, rather than in relation to any specific obligation to Equilease or Signal, we find that Signal's assertion of a default premised upon the revocation of Trotter Corporation's charter was at least "colorable." Finally, from a policy standpoint, we find it appropriate to place the onus of carefully tailoring the letter of credit's terms upon the issuer (First National) rather than upon the beneficiary (Signal).[8] As Bossier Bank indicates, "[t]he court must assume that the issuer drafted the letter of credit in accordance with the directions of its customer and that if the terminology of the letter of credit was unsatisfactory to either they would have amended it accordingly." Bossier Bank, 550 F.2d at 1082. Signal's 1988 demand, which fulfilled the letter of credit's requirements and was supported by a colorable basis, entitled Signal to recover the full amount under the letter of credit. Therefore, the judgment of the district court is REVERSED and the case is REMANDED for entry of judgment in favor of Signal for the entire amount due under the letter of credit.
 
 
 11
 COHN, District Judge concurring.
 
 
 12
 While I fully subscribe to Judge Guy's well reasoned analysis, I would also hold that it is clear on this record that there was a mutual mistake in naming Trotter Development Corporation in the letter of credit, as distinguished from Trotter Development Company. In my view, the Bank's efforts to avoid payment on an obligation knowingly undertaken borders on the frivolous.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Signal Capital Corporation formerly operated under the name "Signal Capital Credit Corporation." The district court ruled that the two entities should be treated as one and the same for purposes of this action. (App. at 31). Accordingly, we shall refer to both entities simply as "Signal."
 
 
 [2]
 Under Tennessee law, a letter of credit is statutorily defined as "an engagement by a bank ... made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." TENN.CODE ANN. Sec. 47-5-103(a) (1979)
 
 
 [3]
 At the time Trotter Company obtained the letter of credit, an entity named "Trotter Development Corporation" was in existence and operating in the State of Tennessee under the control of several Trotter Company partners. Trotter Development Corporation, however, did not owe any obligation to Equilease, Signal, or any other organization involved in this action
 
 
 [4]
 The plaintiff alleged subject-matter jurisdiction based upon diversity of citizenship, see 28 U.S.C. Sec. 1332(a), and the district court agreed. (App. at 29)
 
 
 [5]
 The district court granted partial summary judgment in favor of the plaintiff on August 11, 1988, but later reversed its position in response to the defendant's August 18, 1988, motion for relief from the judgment. Neither party has preserved for appellate review either of the district court's orders on the plaintiff's motion for summary judgment. Accordingly, we must limit the scope of our review to the district court's findings of fact and conclusions of law
 
 
 [6]
 Section 47-5-114(2) states as follows:
 Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Sec. 47-7-507) or of a certificated security (Sec. 47-8-306) or is forged or fraudulent or there is fraud in the transaction:
 (a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Sec. 47-3-302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Sec. 47-7-502) or a bona fide purchaser of a certificated security (Sec. 47-8-302); and
 (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.
 
 
 [7]
 As two noted commentators have observed, "the general rule is that the obligation of the issuer is independent of the existence or nonexistence of an obligation of the customer to the beneficiary. Courts could, by construing the [fraud] exceptions widely enough, swallow up the rule." J. WHITE & R. SUMMERS, HANDBOOK OF THELAW UNDER THE UNIFORM COMMERCIAL CODE Sec. 18-6 at 735 (2d ed. 1980) (emphasis in original)
 
 
 [8]
 The rationale supporting this rule is particularly apparent in a case such as this where the issuer (First National) oversaw the incorrect endorsement of the Equilease check by Trotter Corporation instead of Trotter Company, and then distributed the loan proceeds through cashier's checks naming Trotter Corporation as the remitter