No. C-1187

**The East Bank of Colorado Springs, N.A.**
**v. Dovenmuehle, Inc., a corporation**

(589 P.2d 1361)

Decided October 30, 1978.                              Rehearing denied November 27, 1978.

C. Lee Goodbar, Jr., Henry B. Eastland, for petitioner.

Kraemer and Kendall, P.C., Phillip A. Kendall, Sandy F. Kraemer, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Petitioner, East Bank of Colorado Springs, appeals from the decision of the court of appeals in *Dovenmuehle v. East Bank of Colorado Springs,* 38 Colo. App. 507, 563 P.2d 24, which affirmed a district court judgment against East Bank based on a letter of credit which it had

issued. We affirm the court of appeals.

On February 26, 1974, respondent, Dovenmuehle, Inc., issued a loan commitment letter to Ronald Silverman and Ronald Mesec for the financing of the construction of a 56-unit condominium project in Colorado Springs. The loan commitment provided that Dovenmuehle would loan $2,000,000 to Silverman and Mesec on condition that they procure an irrevocable letter of credit in the amount of $130,000, naming Dovenmuehle as beneficiary. Paragraph 19 of Dovenmuehle's loan commitment provided that the securing of the letter of credit was "a condition to first disbursement of loan proceeds" and was "to provide for the total anticipated cash needs" of the project in excess of the amount of the $2,000,000 loan.

On March 11, 1974, East Bank issued the required irrevocable letter of credit in the amount of $130,000. This was secured by the promissory note of its customers, Silverman and Mesec. The letter of credit named Dovenmuehle as beneficiary and provided that the letter was for any "loan imbalance" as described in paragraph 19 of Dovenmuehle's commitment letter. The only documents required by East Bank to draw on the letter of credit were drafts to be accompanied by signed certifications that the amount drawn was required to cover the loan imbalance.

On March 15, 1974, the construction loan was made by Dovenmuehle to a corporation wholly owned by Silverman and Mesec. The project then proceeded. Prior to completion, however, and before it had advanced the full amount of the loan, Dovenmuehle commenced foreclosure proceedings. Dovenmuehle thereafter made demands for payment against the letter of credit, which East Bank refused to honor. This action followed. The court granted a motion for directed verdict in favor of Dovenmuehle. The court of appeals affirmed the judgment for Dovenmuehle, holding that East Bank wrongfully refused to honor the demands.

East Bank presents three main arguments which it contends justify reversal. First, it asserts that evidence of banking custom and usage should have been admitted by the trial court to show that the letter of credit in question is not the traditional documentary variety, but rather is a "guaranty letter of credit."[1] As such, it requires different documentation from that provided by Dovenmuehle, which could only be shown through evidence of banking custom and usage.

Second, it is argued that because the letter of credit in question is not of the traditional documentary variety it is outside the periphery of Article 5 of the U.C.C., section 4-5-101 through 4-5-116, C.R.S. 1973; therefore, traditional principles of contract interpretation should apply, thereby allowing both the issuing bank and the court to analyze the agreements

---

[1] The term "guaranty letter of credit" was apparently garnered from a law review article authored by Professor Verkuil, entitled *Bank Solvency and Guaranty Letters of Credit, 25 Stan. L. Rev. 716 (1973).*

underlying the letter of credit to determine the validity of a demand upon it.

Finally, East Bank urges that Dovenmuehle's demand failed to supply documentation sufficient to fully comply with the terms of the letter of credit.

We do not agree with East Bank's contentions.

## I.

Concerning the first argument, we note that traditionally letters of credit have been used in sale of goods transactions where a seller demands that a buyer secure from a bank an irrevocable assurance of payment to seller, on behalf of buyer, upon condition that delivery be made to the bank of the documents specified in the letter of credit. (The documents most usually called for are title documents to the goods sold.) Protection is afforded the respective parties by careful description of the documents necessary to trigger payment. With certain exceptions where fraud may be involved, the bank's sole duty is to review the documents delivered. The advantage of the traditional letter of credit lies in the ease by which a bank meets its obligation; it simply acts on the basis of specified documents, thereby avoiding factual disputes over performance of the underlying transactions.

More recently, however, the use of a letter of credit has moved beyond the confines of sale of goods situations.[2] Significantly, the new uses do not involve the passing of documents of title to the bank; rather, the bank's issuance of a letter of credit is secured by the promissory note of its customer on whose behalf the letter was issued.

Several commentators have noted the modern trend and have labeled this new banking device a "guaranty letter of credit."[3] Whether we accept this characterization, as urged by East Bank, is not determinative of the issue at hand, namely, whether the documentation required by this particular letter of credit can be amplified through evidence of custom and

---

[2] The following decisions illustrate that the letter of credit is being used in business transactions other than the sale of goods. *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3rd Cir. 1977) (completion of construction project guaranteed by letter of credit); *Fidelity Bank v. Lutheran Mutual Life Insurance Company*, 465 F.2d 211 (10th Cir. 1972) (letter of credit used to assure compliance by borrower with one of conditions of loan commitment); *Victory Carriers, Inc. v. United States*, 467 F.2d 1334 (Ct.Cl. 1972) (letter of credit used in lieu of performance bond); *Wichita Eagle & Beacon Publishing Company, Inc. v. Pacific National . Bank of San Francisco*, 343 F. Supp. 332 (N.D. Cal. 1971) (payments under a lease guaranteed by a letter of credit); *Fair Pavilions, Inc. v. First National City Bank*, 19 N.Y.S.2d 512, 227 N.E.2d 839, 281 N.Y.S.2d 23 (1967) (payments due under a construction contract secured by a letter of credit).

[3] *Calhoun, Commercial Transactions*, 1976 Annual Survey of Colorado Law; *Battaile, Guaranty Letters of Credit; Problems and Possibilities*, 16 *Ariz. L. Rev.* 822 (1974); *Verkuil, Bank Solvency and Guaranty Letters of Credit*, 25 *Stan. L. Rev.* 716 (1973); Note: *Letters of Credit: Their Use in Domestic Financing*, 22 *S. Caroline L. Rev.* 381 (1969).

Banks recognize the higher risk involved in the use of this device and charge a higher interest rate to their customers than for traditional letters of credit.

usage.

■ The letter of credit in question[4] merely required a draft accompanied by signed certification that the amount demanded is required to cover the loan imbalance as described in paragraph 19 of Dovenmuehle's loan commitment letter. Nonetheless, East Bank asserts that when construction loans are involved local banking custom requires verification (*e.g.* bills, cancelled checks) of an actual loan imbalance before a demand on a letter of credit would be honored. East Bank argues that Dovenmuehle, therefore, would have to show that it had advanced the full $2,000,000, as a prerequisite to a valid demand on its letter of credit.

This assertion disregards the plain language of the relevant part of paragraph 19 of Dovenmuehle's loan commitment letter, entitled "Loan Imbalance," which reads in pertinent part:

"As a condition to first disbursement of loan proceeds, and *to provide for total anticipated cash needs of Borrower* for the construction and marketing of improvements, including applicable development, planning, and loan costs, *such cash needs exceeding the amount of the Loan by $128,500.00,* Borrower shall deposit with Lender an irrevocable letter of credit issued by an approved banking institution in favor of Lender, in form acceptable to Lender, in the amount of $130,000.00. Such Letter of Credit shall be for the full term of the Loan." (Emphasis added.)

The loan commitment thus acknowledged that there was a loan imbalance from the very beginning of the project and the credit amount equaled the anticipated project cost over and above the loan amount. As the court of appeals correctly concluded, Dovenmuehle was to have access to the funds represented by the credit from the inception of the project.

---

[4] The body of the letter of credit follows:
"Dovenmuehle, Incorporated
1322 North Academy Boulevard
Suite 205
Colorado Springs, Colorado 80909
"Re: Messrs. Silverman and Mesec
Pinion Springs Condominiums
Irrevocable Letter of Credit No. 179
"Gentlemen:
"We hereby open our irrevocable Letter of Credit in your favor for the account of Ronald K. Silverman and Ronald A. Mesec to be used in connection with the project known as Pinion Springs Condominiums, Phase I.
"This Letter of Credit will be for loan imbalance not to exceed $130,000.00, as described in paragraph 19 of your commitment letter dated February 26, 1974, and will expire in eighteen (18) months.
"Drafts to be accompanied by signed certifications by Dovenmuehle, Incorporation, or their assigns, that the amount drawn down is required to cover loan imbalance as described in paragraph 19 of your commitment letter.
"All drafts so drawn must be marked 'Drawn under the East Bank of Colorado Springs, National Association, Letter of Credit No. 179.'
"This Letter of Credit will expire September 15, 1975."

To arrive at a contrary conclusion and allow evidence of custom and usage to explain an unambiguous letter of credit, whether it be of the traditional or "guaranty" variety, would undermine the utility of the letter of credit as a stabilizing device in the business and commercial world. If East Bank had desired more than a certification of a loan imbalance, it could have specifically delineated its additional requirements in the letter of credit.

## II.

■ East Bank next argues that because its "guaranty letter of credit" is not of the traditional variety it is not covered by Article 5 of the U.C.C. governing letters of credit, and, therefore, the underlying rights and obligations as between Dovenmuehle and Silverman and Mesec bear upon the bank's obligation to honor a demand on the credit. We do not agree. Section 4-5-102(1), C.R.S. 1973, provides:

"This Article applies:

"(a) To a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment; and

"(b) To a credit issued by a person other than a bank if the crdit requires that the draft or demand for payment be accompanied by a document of title; and

"(c) To a credit issued by a bank or other person if the credit is not within paragraphs (a) or (b) of this subsection (1) but conspicuously states that it is a letter of credit or is conspicuously so entitled."

Clearly, East Bank's letter of credit falls within the ambit of Article 5. It not only is a credit issued by a bank requiring a documentary demand but also conspicuously states that it is a letter of credit. *Accord, Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224 (5th Cir. 1973), *cert. denied,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). Further, it falls squarely within the definition of letter of credit as defined in section 4-5-103(1)(a), C.R.S. 1973:

" 'Credit' or 'letter of credit' means an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this article (section 4-5-102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor."

■ An analysis of relevant U.C.C. provisions and case law fully supports the conclusion that the transactions or contracts underlying East Bank's issuance of the letter of credit have no bearing whatsoever on East Bank's primary liability to the beneficiary of the letter, Dovenmuehle. *Hyland Hills, etc. v. McCoy Enterprises, Inc.,* 38 Colo. App. 23, 554 P.2d 708. *Accord, Barclays Bank D.C.O. v. Mercantile National Bank, supra; Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461

(2nd Cir. 1970); *Savage v. First National Bank and Trust Company of Tulsa*, 413 F.Supp. 447 (N.D. Okla. 1976); *Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (Pa. 1975).

The following contentions of East Bank, therefore, deserve no discussion because they incorrectly focus upon the underlying transactions: Dovenmuehle's foreclosure terminated the bank's obligation; the change in business form of the parties to the loan agreement prejudiced the bank; the circumstances of the relationship between the beneficiary Dovenmuehle and Silverman and Mesec were necessary to a resolution of the issue of the bank's liability; and only the advancement of the full amount of the loan would trigger payment of the credit upon demand.

This conclusion is compelled by the precise wording of section 4-5-114(1), C.R.S. 1973,[5] and its official comment.

■ As stated in the comment: "The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary." Thus, it is the primary obligation between the issuer-bank and the beneficiary. *Fidelity Bank v. Lutheran Mutual Life Insurance Company*, 465 F.2d 211 (10th Cir. 1972).

The court of appeals recognized the independent nature of the letter of credit in *Hyland Hills, etc. v. McCoy Enterprises, Inc.* 38 Colo. App. 23, 554 P.2d 708, where it stated: "The bank issuing the letter of credit is bound by its terms and had no obligation or *right* to investigate the performance of the other contract to which the credit relates." (Emphasis added.) The court there suggested that the parties should have initially incorporated any desired terms in the letter of credit. A similar suggestion is apropos with regard to East Bank.

### III.

■ East Bank contends that Dovenmuehle's demands were deficient because they lacked a draft. We agree with the court of appeals' conclusion that East Bank waived the formal requirement of a draft.

Dovenmuehle's three demands upon the letter of credit were in the form of signed certifications of a loan imbalance. East Bank refused to honor the demands on the grounds that: (1) the project was being managed by a corporation and not by Silverman and Mesec as individuals; (2) Silverman and Mesec were in bankruptcy; (3) the letter of credit was only subject to call near completion of the project; (4) work on the project ahd

---

[5] Section 4-5-114(1), C.R.S. 1973, provides:

"An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit, regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it."

terminated; and (5) the certification was ambiguous. East Bank never objected to the form of the demand and the absence of a draft.

By formally placing its refusal to pay upon specific grounds, East Bank waived the requirement of a draft. *Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224 (5th Cir. 1973), *cert. denied,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). The court of appeals properly so held, stating: "To permit an issuer to evade payments for extended periods of time under the credit without affording the beneficiary an opportunity to remedy the defect in its demand comports neither with principles of fairness nor with the justifiable expectations of parties engaged in commercial enterprises." *Dovenmuehle v. East Bank of Colorado Springs,* 38 Colo. App. 507, 563 P.2d 24. *Accord, North Valley Bank v. National Bank of Austin,* 437 F.Supp. 70 (N.D. Ill. 1977).

East Bank could have easily notified Dovenmuehle that its demand was insufficient because it lacked a draft — a fault easily remedied. Instead, East Bank focused its refusal to pay upon information it received concerning the underlying transactions. As such, it misled Dovenmuehle as to the formal adequacy of the demand and thus East Bank was precluded from asserting the defense of technical noncompliance with the terms of the letter of credit. *Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston,* 569 F.2d 699 (1st Cir. 1978).

The judgment is affirmed.

MR. JUSTICE PRINGLE does not participate.