**BOARD OF COUNTY COMMISSIONERS OF ROUTT COUNTY, Colorado, Plaintiff-Appellee**

v.

**The COLORADO NATIONAL BANK OF DENVER, a National Banking Association, Defendant-Appellant.**

No. 78–349.

Colorado Court of Appeals, Division II.

Aug. 30, 1979.

Rehearing Denied Oct. 18, 1979.

Certiorari Granted March 10, 1980.

Yegge, Hall & Evans, Robert S. Treece, Kristine Bradt Kendrick, Denver, for plaintiff-appellee.

Davis, Graham & Stubbs, A. Bruce Campbell, Randall Weeks, Denver, for defendant-appellant.

SMITH, Judge.

The Colorado National Bank of Denver appeals from a judgment in favor of the Board of County Commissioners of Routt County. The judgment, resulting from the consolidated trial of two separate cases, was based upon three separate letters of credit issued by the bank in favor of the county.

The bank and the county submitted the consolidated cases to the court on a stipulated record in lieu of trial. The record included an agreed statement of facts with respect to the county's demands under the letters of credit, and included an agreed summary of testimony and documentary evidence that the bank would seek to offer at trial in support of its defenses other than the defense of nonconforming demand. The trial court denied the bank's offer of proof and awarded the county the face amounts of the letters of credit totalling $349,835, plus interest in the amount of $44,622.77. We affirm.

This dispute arose from a planned recreational subdivision initiated by Woodmoor Corporation. Woodmoor planned a development to be known as Stagecoach in which it proposed to divide and sell lots for single and multiple family units and to construct common amenities for the development. Although in 1973 Woodmoor had obtained plat approval for its project, county regulations required Woodmoor to enter into road improvement agreements with the county. Under these regulations, Woodmoor was obligated to construct specific internal road-ways and related improvements within its planned development. The regulations required that Woodmoor provide guarantees of funds sufficient to insure its performance, and between January and March of 1973, the bank on Woodmoor's behalf issued three letters of credit to assure performance. The letters of credit authorized the county to draw directly on the bank, for the account of Woodmoor, such amounts which in the aggregate would not exceed the face amount of each letter of credit.

Because of Woodmoor's subsequent bankruptcy proceedings in January of 1974, construction of the road improvements, for which the guarantee of funds was required, was never commenced. On December 31, 1975, drafts on two of the letters of credit were presented to the bank which refused to honor them. On December 22, 1976, and December 29, 1976, two more drafts were presented to the bank on the third letter of credit, and these drafts were also dishonored by the bank.

The bank, in its offer of proof to the trial court, presented evidence to show that, at the time the county made its demands on the letters of credit, and thereafter, the planned subdivisions remained essentially undeveloped and unpopulated raw mountain properties. The bank further offered to prove that during the life of each letter of credit, the county had spent nothing for the construction of road improvements identified in Woodmoor's planned development, nor had the county made any contract or commitment for expenditure of any funds for the construction of the roads. The bank offered to prove that even as of the date of trial, the county had spent nothing on the construction of the roads, had committed no funds for the purpose, and had no plans for beginning construction.

The bank initially argues to this court that entry of judgment by the trial court resulted in an unjustifiable windfall to the county. The bank argues that it issued these letters of credit for the stated purpose of guaranteeing funds for specified road improvements which were never constructed, and that it should therefore not be held liable on them.

The bank bases this argument on the assertion that "standby" letters of credit are entirely different from traditional commercial sales letters of credit. It asserts that while ordinary commercial letters impose a primary and independent obligation upon the issuer to pay, in the case of a "standby" letter, the issuer undertakes only to be secondarily liable to pay damages resulting from its customers' failure to perform the underlying contract. The bank argues that since the letters involved here are "standby" letters of credit, the bank has only a secondary obligation to pay an obligation which is wholly dependent upon the question of nonperformance of the underlying guaranteed obligation. Essentially, the bank asserts that these "standby" letters of credit are not covered by Article 5 of the Uniform Commercial Code, and that therefore, the status of the underlying rights and obligations between Woodmoor and the county determines the bank's obligation to honor the demand. We do not agree.

The Uniform Commercial Code, § 4–5–102(1), C.R.S.1973 provides: "This article applies

(a) To a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment; and

(b) To a credit issued by a person other than a bank if the credit requires that the draft or demand for payment be accompanied by a document of title; and

(c) To a credit issued by a bank or other person if the credit is not within subparagraphs (a) or (b) . . . but conspicuously states that it is a letter of credit or is conspicuously so entitled."

As stipulated by the parties, these letters of credit not only require documentary drafts, but are also "conspicuously so entitled" and therefore the bank's letters clearly fall within the ambit of Article 5 of the U.C.C. Because the letters of credit fall within the scope of Article 5 "an issuer must honor a draft or demand for payment which complies with the terms of the relevant credit, regardless of whether the goods or documents conform to the underlying contract . . . ." Section 4–5–114, C.R.

S.1973. Therefore, the transactions or contracts underlying the bank's issuance of the letter of credit have no bearing whatsoever on the bank's primary liability to the beneficiary of the letter, the county. *East Bank of Colorado Springs v. Dovenmuehle, Inc.,* Colo., 589 P.2d 1361; *Hyland Hills Metropolitan Park & Recreation District v. McCoy Enterprises, Inc.,* 38 Colo.App. 23, 554 P.2d 708 (1976); *United Bank of Denver v. Quadrangle, Ltd.,* Colo.App., 596 P.2d 408 (1979). Thus, the reliance of the bank on defenses which focus upon the underlying transaction is misplaced. The trial court correctly declined to consider evidence of the intent and purposes of the parties in causing the letters of credit to issue, the modifications and ultimate abandonment of the primary contract, and the evidence relating to the absence of damages or injuries.

The bank next contends that the demands made by the county under the letters of credit were not conforming. Particularly, the bank argues that the drafts included with these demands were not payable at "15 day sight" as called for by the letters of credit; and that a 15 day sight draft presented in connection with a demand on the third letter of credit was not accompanied by a duly signed resolution of the county board as called for in the letter of credit. The bank argues that it is clear that there were defects in the form of the demand made under each of the letters of credit. While this may be true, we hold these defects to have been waived.

When an issuer of "a letter" formally refuses to pay on one ground it has waived all other objections. *East Bank of Colorado Springs v. Dovenmuehle, supra.* Here, the bank notified the county long before the expiration dates of the letters of credit that the bank would honor drafts only for any amounts the county actually expended on improvements before the expiration date. The bank admits that when it notified the county that the bank would not make payment under the letters of credit, it did not mention, much less detail, the respects in which the county's demands failed

to comply with the terms of the letters of credit. Thus, the bank based its refusal to pay upon the failure of the underlying transaction, not on the formal adequacy of the demand required.

The fact that the county was thus misled is apparent from the fact that even after the first dishonor, subsequent demands were made in the same form. The bank is thus precluded from asserting the defense of technical noncompliance with the terms of the letter of credit. *East Bank of Colorado Springs v. Dovenmuehle, supra.*

The bank next argues that it was error for the trial court to assess interest computed from the date the bank dishonored the demands made under the letters of credit. Again, we disagree.

Section 4–5–115(1), C.R.S.1973, specifically states:

"When an issuer wrongfully dishonors a draft or demand for payment presented under a credit, the person entitled to honor . : . may recover from the issuer the face amount of the draft or demand together with . . . interest . . ."

The county is clearly entitled under this section to interest on the face amount of each demand from the date of dishonor.

The bank asserts as error the trial court's failure to make its judgment conditional on the county's first expending funds for the purpose of constructing roads as required by Woodmoor's original obligation. To do so would, however, not only have required the court to examine the underlying obligation, but would also have required the exercise of equitable jurisdiction by the court. When the rights of the parties are clearly defined and established by law, a court may not employ an equitable remedy. *People ex rel. Winbourn v. District Court,* 87 Colo. 316, 287 P. 849 (1930). Since Article 5 of the Uniform Commercial Code provides for the relief given the county by the trial court and fully delineates the rights of the parties, the trial court properly declined to exercise its equitable jurisdiction in lieu of remedies provided for by law.

We have considered the bank's other arguments and find them to be without merit.

Judgment affirmed.

ENOCH, C. J., and PIERCE, J., concur.