**ARBEST CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,**

v.

**The FIRST NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY, Defendant-Appellee.**

**HERITAGE MANUFACTURING AND BUILDING SUPPLY, INC., Plaintiff-Appellant,**

v.

**The FIRST NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY, Defendant-Appellee.**

No. 83–1961.

United States Court of Appeals, Tenth Circuit.

Nov. 19, 1985.

John D. Alford and Gregory G. Smith of Pryor, Robinson & Barry, Fort Smith, Ark., for plaintiffs-appellants.

George W. Dahnke and Merrilyn L. Blackburn of Hastie & Kirschner, Oklahoma City, Okl., for defendant-appellee.

Before LOGAN, SETH, and McWILLIAMS, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). The cause is therefore ordered submitted without oral argument.

This is a diversity case involving a letter of credit issued by defendant First National Bank and Trust of Oklahoma City. Plaintiffs Arbest Construction Company and Heritage Building and Manufacturing Company seek to force payments under the letter of credit, although it was issued to another unjoined party and has expired. Plaintiffs claim rights as third party beneficiaries to an agreement involving both the party ordering the letter of credit and the party to whom the letter was issued.

The district court granted summary judgment to the defendant bank. Plaintiffs appealed. We affirm.

In 1980 a limited partnership made plans to build a housing project for the elderly in Oklahoma. The Federal Housing Commission (FHC) approved the project and committed to insure a proposed mortgage loan on it. The partnership then simultaneously entered into three separate contracts: (1) a mortgage loan agreement with the proposed lender to finance the project; (2) a construction agreement with a contractor to build the project; and (3) a "completion assurance agreement" between the partnership, the contractor, and the lender to secure completion of the project. Thereafter, the construction contractor independently entered into agreements with plaintiffs, who became the major subcontractors on the project.

The completion assurance agreement is central to this dispute. For all projects receiving FHC insurance, FHC regulations state:

"The mortgagor shall furnish assurance of completion of the project in the form of a personal indemnity agreement, corporate surety bonds for payment and performance, *or a completion assurance agreement secured by a cash deposit.* All types of assurance of completion shall be on the forms approved by the Commissioner. All surety companies issuing bonds and all parties executing a personal indemnity agreement must be satisfactory to the Commissioner...."

24 C.F.R. § 221.542(a) (emphasis added). Under the FHC rules, a letter of credit also may "fund" or secure the completion assurance agreement. The regulations provide:

"The mortgagee may accept, in lieu of a cash deposit, required by paragraph (a) of this section, an unconditional irrevocable letter of credit *issued to the mortgagee* by a banking institution. In the event a demand under the letter of credit is not immediately met, the mortgagee shall forthwith provide cash equivalent to the undrawn balance thereunder."

*Id.* at § 221.542(b) (emphasis added).

The purpose of the completion assurance fund was to protect the lender against losses caused by failure of the contractor to perform. Through it, the FHA sought assurance that the mortgage it insured would represent a first-priority security interest in a project both completed and free of conflicting liens.

The partnership mortgagor here chose to use a completion assurance agreement to satisfy the FHC rules, and to fund it with a bank-issued letter of credit. The letter of credit was issued to the lender. Apparently plaintiffs filed no materialmen's liens against the project itself within statutory time limits, or that presumably would have triggered a demand under the letter of credit. Evidently no dispute arose between the partnership or the contractor and the lender. The lender never made any demand on the letter of credit, which expired under its own terms.

The contractor did fail, however, and did not pay the plaintiff subcontractors for work they had performed. The subcontractors have now sued, claiming rights against the completion assurance fund. They seek to force the bank to pay under the letter of credit, although they are not named parties to the letter of credit and it has expired.

Plaintiff subcontractors assert that they are intended third party beneficiaries of the construction contract between the partnership and the contractor, and that consequently their rights extend to the completion assurance agreement and its fund. They argue that if the completion assurance fund had been funded by other means, such as a surety bond, they would have had rights against the outside party supplying the "funding."[1] Given this, plaintiffs ask us to ignore the narrow statutory duties of the bank as an issuer of a letter of credit, in order to "do justice" regarding a legitimate grievance. We find we are limited by the statutory commands.

## I

Oklahoma has adopted the Uniform Commercial Code (U.C.C.) provisions on letters of credit.[2] Okla.Stat.Ann. tit. 12A §§ 5–101 to 5–117. Under those provisions, a letter of credit involves three parties: (1) an issuer (generally a bank) who agrees to pay conforming drafts presented under the letter of credit; (2) a bank customer or "account party" who orders the letter of credit and dictates its terms; and (3) a beneficiary to whom the letter of credit is issued, who can collect monies under the letter of credit by presenting drafts and making proper demand on the issuer. *See id.* § 5–103(1). A letter of credit thus involves three relationships—between the issuer and the account party, the issuer and the beneficiary, and the account party and the beneficiary (this last relationship being the underlying business deal giving rise to the issuance of the letter of credit). The simple result is that the issuer substitutes its credit, preferred by the beneficiary, for that of the account party. The arrangement facilitates commercial transactions.

The three letter of credit relationships are legally distinct. *See, e.g., Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224, 1238–39 (5th Cir. 1973); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 464–65 (2d Cir. 1970). Further, the relationship between the issuer and the beneficiary is statutory, not contractual. As Professors White and Summers note:

"The obligations, particularly those of an issuer to a beneficiary, that arise under a letter of credit are not exclusively contractual in nature, and it is unfortunate that some of the Code comments suggest as much. It is true that the issuer's customer and the beneficiary will ordinarily have a contract, for instance, for the purchase and sale of goods, for the construction of a ship, or the like, and it is also true that the issuer and the customer will ordinarily have a contract between them whereby the cus-

---

**1.** *See Gibbs v. Trinity Universal Ins. Co.,* 330 P.2d 1035 (Okla.1958) (subcontractor's third party beneficiary rights can extend to rights against surety issuing performance bond to contractor that does not mention third party; surety obligations to third party subcontractor under the performance bond will be construed by reading bond alongside contract between contractor and owner); *International Paper Co. v. Whitson,* 571 F.2d 1133 (10th Cir.1977) (*Gibbs* rule extended to allow subcontractor third party beneficiary rights in completion assurance agreement between owner-contractor and lender).

**2.** A preliminary question in this case is whether state or federal law governs. The letter of credit here was obtained to meet a federal require-

ment for federally insured housing projects and does not include a choice of law provision. This circuit has held, however, that rights of a third party beneficiary to a construction contract for federally assisted housing should be determined under state law. *International Paper Co. v. Whitson,* 571 F.2d at 1135. When local rules do not limit the effectiveness of remedies available to the federal government for breach of a federal duty, they generally will control. *Id.* Even if we thought it necessary to apply federal common law here, the prominence of the U.C.C. probably would cause us to adopt it as a statement of the federal common law. The conflict of laws issue thus is insubstantial.

tomer pays a fee and the issuer issues the letter of credit. But the resulting letter of credit is not itself a contract, and the issuer's obligation to honor drafts is not, strictly speaking, a contractual one to the beneficiary. The beneficiary does not enter into any agreement with the issuer. Indeed, prior to issuance of the letter of credit, issuer and beneficiary may be wholly unknown to each other. Yet once the letter of credit is established, the issuer becomes *statutorily* obligated to honor drafts drawn by the beneficiary that comply with the terms of the credit."

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2, at 711 (2d ed. 1980) (footnotes omitted) (emphasis in original) (hereinafter White & Summers).

■ Under the U.C.C. framework an issuer like the bank has only two narrow groups of duties. First, it has statutory and contractual duties to its customer, the account party. *See* Okla.Stat.Ann. tit. 12A § 5–109. Second, it has purely statutory duties to the beneficiary. *See id.* § 5–114. These latter duties are especially limited. An issuer must honor a draft accompanied by proper demand. *Id.* It may ignore any improper demand. *Id.* And no provision in the Oklahoma statutes imposes duties on the issuer toward third parties who are neither named by the letter of credit nor proper assignees of the letter of credit. Even for *named* beneficiaries, the general rule is that the issuer may not consider problems with the underlying transaction when deciding whether to honor a demand.[3] *See, e.g., Bank of Newport v. First Na-*

*tional Bank,* 687 F.2d 1257, 1261 (8th Cir. 1982). The statute and the cases similarly impose no duty upon issuers for expired letters of credit. *See* Okla.Stat.Ann. tit. 12A §§ 5–106(2), 5–114(2); *Hyland Hills Metropolitan Park and Recreation District v. McCoy Enterprises, Inc.,* 38 Colo. App. 23, 554 P.2d 708, 710 (1976).[4]

■ This rule limiting the issuer's duties is grounded in policy. The issuer is immune from responsibilities to police the underlying transaction because it lacks control over it, or possibly even knowledge of it. *See Bank of Newport v. First National Bank,* 687 F.2d at 1261–62. The issuer similarly lacks control over the selection of the beneficiary. This lack of control gives the letter of credit its commercial vitality. The issuer can write a letter of credit pursuant to the instructions of its credit-worthy customer without investigation of the underlying transaction. *Id.* When and if proper demand is made, it pays, again without investigation. The broad right of the issuer to ignore improper demand is a corollary to the strict duty of the issuer to honor proper demand.

This special status of letters of credit was intended by the U.C.C. framers. "[I]t was one of the prime purposes of the drafters of Article Five to 'set an independent theoretical framework' for this device, a framework independent of contract, of guaranty, of third party beneficiary law, of the law of assignment, and of negotiable instruments." White & Summers, § 18–2, at 711.

■ We have found no decision contradicting this statutory structure and holding

---

**3.** The "fraud in the transaction" exception in § 5–114(2), however, allows an issuer of a letter of credit, in an extreme case, to dishonor a technically proper demand. The classic case involves (1) a beneficiary/seller who makes proper demand on a letter of credit *after* shipping worthless goods to the account party/buyer, and (2) an issuer who knows of the underlying fraud. *See Sztejn v. J. Henry Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (Sup. Ct.1941) (the leading case, "codified" by § 5–114(2) ). This narrow "fraud in the transaction" exception to the duties and rights of the issuer of a letter of credit has no application to argu-

ments for the forced honoring of demand, or for demand by third parties not named as beneficiaries. *See Colorado National Bank v. Board of County Comm'rs,* 634 P.2d 32, 39–40 (Colo. 1981) (§ 5–114(2) exception held narrow, looking only to conduct of beneficiary *against* account party).

**4.** *But see Marino Indus. Corp. v. Chase Manhattan Bank, N.A.,* 686 F.2d 112, 117–18 (2d Cir. 1982) (if proper beneficiary is *prevented by issuer* from making timely demand, late demand is possible).

that unnamed, nonassignee third parties, such as the plaintiff subcontractors, can make a proper demand on a letter of credit. The cases plaintiffs cite are inapposite. Under the Oklahoma statutes, plaintiffs received no rights against the bank as issuer.

## II

Plaintiffs argue that the Oklahoma U.C.C. provisions should not apply because the letter of credit issued here, an "irrevocable standby letter of credit," is different from a standard commercial letter of credit. The latter is a simple payment mechanism. Rather than a buyer promising to pay seller, a buyer/account party has an issuer promise to pay a seller/beneficiary; payment is expected to occur through the issuer. In contrast, the "standby" letter of credit is merely a backup. The beneficiary makes proper demand upon the issuer only if the account party fails to pay or perform. The standby letter of credit is therefore quite similar to a surety bond. *See Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131, 1135 (10th Cir.1984) (discussion of the two types of letters of credit; standby letters of credit found similar to surety bonds, but held not so similar as to violate prohibition on the issuing of surety bonds by federal banks), *cert. granted,* —— U.S. ——, 106 S.Ct. 245, 88 L.Ed.2d 253 (1985).

The differences between these two types of letters of credit do not allow us to disregard the Oklahoma U.C.C. rules. The framers of the U.C.C. were aware of the continuing need for statutory law to conform to actual commercial use and accommodate change. Article Five was intended "to apply to many types of letter of credit transactions besides those involving sale of goods." *See* White & Summers, § 18–3, at 716. There has been a recent explosive growth in use of standby letters of credit; application of the statutory rules to standby letters of credit is the sort of change the U.C.C. framers intended to accommodate.

Plaintiffs stress § 5–102(3), which states that:

"This Article deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this act or may hereafter develop. The fact that this Article states a rule does not by itself require, imply or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this Article."

This provision does indeed grant courts some leeway. But we read it as encouraging us to apply the existing statutory letter of credit rules to useful new letter of credit variations. *See East Bank of Colorado Springs, N.A. v. Dovenmuehle, Inc.*, 196 Colo. 422, 589 P.2d 1361, 1365 (1978) (Colorado courts decline to alter U.C.C. rights of beneficiary of "standby" letter of credit by applying general contract law rights).[5] Plaintiffs' grievance is not with the U.C.C. letter of credit rules; it is with the FHC regulations on funding alternatives for the completion assurance fund, which apparently provide less than complete protection for subcontractors.

AFFIRMED.

**5.** *But cf. Schweibish v. Ponchartrain State Bank,* 389 So.2d 731, 737 (La.App.1980) (U.C.C. § 5–102(3) allows application of doctrine of estoppel to letters of credit; issuer previously treating slightly non-conforming documents presented by beneficiary as acceptable now estopped from demanding strictly conforming documents).