**NEWVECTOR COMMUNICATIONS, INC., Plaintiff,**

v.

**UNION BANK, Defendant and Third Party Plaintiff,**

v.

**AMERICAN MOBILE COMMUNICATION and Richard D. Paul, Third Party Defendants.**

**Civ. No. C86–125G.**

United States District Court, D. Utah, C.D.

March 18, 1987.

Mark S. Swan, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on cross Motions for Summary Judgment on January 5, 1987. Plaintiff was represented by Joseph T. Dunbeck and defendant was represented by Mark S. Swan. Memorandums and affidavits were submitted by counsel, and the court heard extensive oral argument after which the matter was taken under advisement. The court now being fully advised, enters its Memorandum Decision and Order.

FACTUAL BACKGROUND

Defendant bank issued its Letter of Credit dated March 11, 1985, in favor of plaintiff as Beneficiary, with March 11, 1986, as the expiration date for payment. Prior thereto, plaintiff had entered into an agreement with American Mobile Communications pursuant to which mobile telephone services were to be supplied by plaintiff to American Mobile for resale to the public. In addition to a down payment, American Mobile was required to provide a security deposit in the form of an irrevocable letter of credit. This was arranged for by American Mobile as the Account Party with defendant Union Bank as the Issuer, with the instruction that the Letter must contain language that would make payment thereunder subject to compliance with a Resellers Agreement containing standards concerning past due accounts to trigger presentation of drafts on the Letter of Credit. Accordingly, defendant included in the Letter a provision establishing the irrevocable letter of credit up to the amount of $35,000 "... available by draft(s) as per Resellers Agreement on past due accounts, drawn at sight on Union Bank ..." The Bank further agreed to honor such drafts "upon presentation and delivery of documents as specified to the drawee ..."

Joseph T. Dunbeck, Salt Lake City, Utah, for plaintiff.

On September 24, 1985, plaintiff presented defendant with a draft for $35,000 on

the Letter of Credit and enclosed with the draft invoices for past due accounts of American Mobile. On October 4, 1985, defendant bank dishonored the draft for the reason that it had not received a copy of the "Reseller's Agreement" referred to in the letter. Thereafter, counsel for defendant informed counsel for plaintiff that the bank insisted upon strict compliance with the Letter of Credit, including submission of the Resellers Agreement. Counsel for plaintiff informed counsel for defendant that a Reseller's Agreement as such did not exist, but that what was intended was an arrangement for payment upon default under the terms of a Tariff. Counsel for the bank again informed counsel for plaintiff that strict compliance would be required, and that the Resellers Agreement would have to be produced. On January 21, 1986, a second draft on the Letter of Credit was submitted to defendant, enclosing the Tariff and other documents evidencing the reseller relationship between NewVector and American Mobile. The bank was requested to specify the basis for any dishonor of the draft so that NewVector could cure any defects prior to expiration of the Letter. There was further contact between counsel for plaintiff and defendant after the second draft was submitted in which counsel for plaintiff set forth that no single document entitled "Resellers Agreement" was in existence, but that such was "evidenced by several documents including a tariff." Demand for payment was reiterated. This lawsuit was then commenced on February 13, 1986, for wrongful dishonor. On March 11, 1986, the termination date of the Letter, the Bank dishonored the second draft because of NewVector's failure to present the Resellers Agreement and that there had been "failure to comply with the terms for payment of the Letter of Credit."

## BASIC APPLICABLE PRINCIPLES

■ A letter of credit[1] properly established[2] constitutes an enforceable obligation created by statute[3] in the nature of a contract by the Issuer (in this case defendant Union Bank) in favor of the Beneficiary (in this case plaintiff NewVector Communications). The obligation represented by the letter of credit constitutes one of three separate relationships always present in a letter of credit transaction.[4]

---

1. Letter of credit is defined in the Uniform Commercial Code as follows:

   "credit" or "letter of credit" means an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5-102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. · A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the .bank or other person is authorized to honor.
   UCC § 5-103(1)(a). Since in the instances referred to in this opinion the Uniform Commercial Code (UCC) is enacted verbatim in Utah further references to the Code are to "U.C.C." See Utah Code Ann. §§ 70A-5-101 to -117 (1980).

2. U.C.A. § 106 provides:

   (1) Unless otherwise agreed a credit is established
     (a) as regards the customer as soon as a letter of credit is sent to him or the letter of credit or an authorized written advise of its issuance is sent to the beneficiary; and
     (b) as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.

3. In *Arbest Construction Company v. First National Bank & Trust Co. of Oklahoma City*, 777 F.2d 581, 583 (10th Cir.1985) the court observed that "... the relationship between issuer and the beneficiary is statutory, not contractual."

4. Those separate relationships are:

   1. *Agreement Between Account Party and Beneficiary*—The issuer's customer, or Account Party, agrees to pay money to the Beneficiary under certain terms and conditions. This contract often explicitly provides for establishment of a Letter of Credit and defines its terms. (This contract if often referred to as the underlying agreement or "Commercial Contract." The issuer is not a party to this agreement.)
   2. *Agreement Between Account Party and the Issuer*—The Account Party makes application with bank (Issuer) for a specified Letter of Credit and agrees to reimburse the Issuer in accordance with the credit. (This contract is often referred to as the "Reimbursement Agreement." The beneficiary is not a party to this agreement.)
   3. *Agreement By the Issuer in Favor of the Beneficiary*—The Issuer agrees to make payment to the Beneficiary for the account of the Account Party in accordance with terms and conditions set forth in the Letter of Credit.

The duty created in the letter of credit is wholly independent of the underlying contract between the issuer's customer (in this case third party defendant American Mobile Communication) and the beneficiary.[5]

▮▮▮ The basic rule applicable to letters of credit is that the obligation set forth therein must be strictly construed and performed precisely in accordance with its terms.[6] Typically in the case of many commercial transactions performance is measured by reference to documents required by the letter of credit.[7] Where documents are required, "There is no room for documents which are almost the same, or which will do just as well."[8] In all events, where documents are called for, determination of the issuer's duty of performance depends upon the presentation of conforming documents and not upon the factual performance or non-performance by the parties to the underlying transaction.[9] Where no "documents"[10] are called for, the so-called "clean" letter of credit contemplated in such a transaction requires only inspection of drafts presented by the beneficiary.[11] More often in contemporary

(This is the Letter of Credit itself. The account party is not a party to this agreement. Technically neither is the Beneficiary a party in the sense of a bargained for agreement or meeting of the minds, but by statute the issuer is bound to the terms of the issued credit.) *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2, at 711–715 (2nd Ed. 1980). Cases uniformly recognize that three separate and distinct contracts are involved in a letter of credit transaction. *See Arbest Construction Co. v. First Nat'l Bank & Trust Co. of Oklahoma City,* 777 F.2d 581 (10th Cir.1985); *East Girard Sav. Ass'n v. Citizen Nat'l Bank & Trust Co.,* 593 F.2d 598, 601 (5th Cir.1979); *Data General Corp., Inc. v. Citizens Nat'l Bank of Fairfield,* 502 F.Supp. 776, 780 (D.Conn.1980); *United Technologies Corp. v. Citibank,* 469 F.Supp. 473, 477 (S.D.N.Y.1979); *Colorado Nat'l Bank of Denver v. County Comm'rs of Routt County,* 634 P.2d 32, 36 (Colo. 1981); *First Nat'l Bank v. Rosebud Hous. Auth.,* 291 N.W.2d 41, 44 (Iowa 1980).

5. The letter of credit constitutes a statutory obligation of the issuer to honor drafts drawn by the beneficiary which comply with the terms of the letter of credit. This obligation is independent of the underlying contract between the customer and the beneficiary. In *Itek Corp. v. First Nat'l Bank of Boston,* 730 F.2d 19, 24 (1st Cir.1984) the court said:

The very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms contained in the letter itself—when he presents, for example, ... a simply written demand for payment. Parties to a contact may use a letter of credit in order to make certain that contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party. Thus, courts typically have asserted that such letters of credit are "independent" of the underlying contract ... And they have recognized that examining the rights and wrongs of a contract dispute to determine whether a letter of credit should be paid risks depriving its beneficiary of the very advantage for which he bargained, namely that the dispute would be resolved while he is in possession of the money.

6. *Voest-Alpine Internat'l Corp. v. Chase Manhattan Bank,* 707 F.2d 680, 682–83 (2d Cir.1983); *Beyene v. Irving Trust Company,* 596 F.Supp. 438, 442 (S.D.N.Y.1984), *aff'd,* 762 F.2d 4 (2nd Cir.1985); *Consolidated Aluminum Corp. v. Bank of Virginia,* 544 F.Supp. 386, 395 (D.Md. 1982), *aff'd* 704 F.2d 136 (4th Cir.1983); *Corporacion de Mercadeo Agricola v. Mellon Bank International,* 464 F.Supp. 88, 91 (S.D.N.Y.1978), *aff'd,* 608 F.2d 43 (2nd Cir.1979).

7. The *Uniform Customs and Practices for Documentary Credits* (1974 Revision), International Chamber of Commerce, Publication No. 290 [hereinafter referred to as UPC] most often is referred to and incorporated in the letter of credit, as in this case. UCP Article 8 provides that "in documentary credit operations all parties concerned deal in documents not in goods...." Accordingly, if the letter of credit is silent, the UCP may apply as evidence of specific custom. UCC Article 5 does not purport to cover complete statutory regulation of letters of credit (*see* UCC § 5–102(3)).

8. The oft quoted statement was first set forth in *Equitable Trust Co. v. Dawson Partners,* 27 Lloyd's List L.R. 49 (1927). *See Marino Industries Corp. v. The Chase Manhattan Bank,* 686 F.2d 112, 118 (2nd Cir.1982).

9. *Chase Manhattan Bank v. Equibank,* 550 F.2d 882, 885 (3rd Cir.1977). *See also Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 115 (Tex.1979).

10. UCC § 5–103(1)(b) defines "document" expansively as "any paper including document of title, security, invoice, certificate, notice of default and the like."

11. However, such totally "clean" letters are unusual: "In current usage the term 'clean credit' is really a misnomer because it is rare indeed to find a credit that does not require the presenta-

practice, credits are issued which do not call for "documents" but nonetheless contain representations or conditions.[12] Where such is the case, the rule is more precisely stated: "In letters of credit transactions, the parties deal in written representations and not in facts." [13]

■■■ A letter of credit may require compliance with non-documentary conditions for payment, but required compliance with conditions in another contract cannot totally transform or eliminate the nature and purpose of the letter of credit.[14] It seems clear, however, that even compliance with the terms of the underlying agreement could be required so long as such are clearly identified and unambiguously referenced.[15] Such reference to the underlying agreement is unusual since that is the very thing most issuers want to avoid.[16]

## ISSUE PRESENTED

In the case at bar, cross motions for summary judgment have been filed. These motions essentially raise the same issue: Whether presentation of the draft in this case, without the referenced "Resellers Agreement," constituted sufficient compliance with the terms of the letter of credit

so as to create a duty on the part of Union Bank to honor the draft.

## CONTENTIONS OF THE PARTIES

Plaintiff-beneficiary argues that the draft alone was sufficient because the letter does not expressly require presentation of the Resellers Agreement. In the alternative, plaintiff contends that the reference to Resellers Agreement in the Letter is so imprecise and indefinite that it should not be regarded as a condition and that as a matter of policy the "condition" should fail and be interpreted against the bank as drafter of the instrument. In all events, plaintiff contends that in fact it did present "all documents evidencing the reseller relationship," and that since the bank failed to specify defects, it should be estopped to deny that such constituted sufficient compliance in view of the facts of this case.

Defendant-bank contends that there was non-compliance by plaintiff with an express condition of payment, i.e., presentation of the Resellers Agreement. In the alternative, defendant asserts that the reference to Resellers Agreement created a clear and unambiguous non-documentary condition which had to be complied with, i.e., compliance with the terms of the Resellers Agreement. Finally, defendant maintains that if

tion of something in addition to a simple demand for payment of a special amount." H. Harfield, *Uniform Commercial Code/Practice Handbook, Letters of Credit*, at 38 (American Law Institute—American Bar Association Committee on Continuing Professional Education (ALI–ABA) 1979) [hereinafter referred to as *Practice Handbook* ].

**12.** However, where no condition is specified, examination of drafts only is required. *Baker v. Nat'l Blvd. Bank*, 399 F.Supp. 1021, 1024 (N.D. Ill.1975).

**13.** *Practice Handbook* at 37.

**14.** In *Wichita Eagle & Beacon Pub. Co. v. Pacific Nat'l Bank*, 493 F.2d 1285 (9th Cir.1974), the court held that a supposed "Letter of credit" in fact was an ordinary guaranty contract and hence governed by the law applicable to guarantees since the issuer was required to make payment of the contested sums due under a lease. The court said that the distinction between a letter of credit and an ordinary guaranty was "obliterated," stating that

The instrument involved here strays too far from the basic purpose of letters of credit,

namely, providing a means of assuring payment cheaply by eliminating the need for the issuer to police the underlying contract. 493 F.2d at 1286.

**15.** *Pringle-Associated Mortgage Corp. v. Southern National Bank*, 571 F.2d 871, 874 (5th Cir.1978); *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107, 1112 (W.D.Pa.1976); *Dovenmuehle v. East Bank of Colorado Springs*, 38 Colo.App. 507, 563 P.2d 24, 28 (1977), *aff'd*, 196 Colo. 422, 589 P.2d 1361 (1978).

**16.** Issuers of letters of credit ordinarily are loathe to become embroiled in the inevitable controversies between their customers and beneficiaries of the letter. Accordingly, in the absence of clearly set forth conditional language an issuer need not and indeed must not consider or examine anything to do with the underlying agreement.

An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. UCC § 5–114(1).

there is to be a determination of whether the submissions by plaintiff constituted sufficient evidence of the required Resellers Agreement, defendant should be allowed to conduct further discovery because it has reason to believe that "there is in fact a Resellers Agreement, the terms of which are not before the court at this time."

ANALYSIS

## I. Compliance with Condition of Performance is Required Before There Could be a Wrongful Dishonor

■ An issuer must examine documents and/or written representations with care so as to ascertain that on their face they appear to comply with the terms of the credit.[17] Accordingly, before there could be a failure to so examine and ascertain conformity there would have to be adequate performance by the beneficiary. There is no liability on the issuing bank for wrongful dishonor where the beneficiary knowingly has not performed in accordance with the terms and conditions of the letter.[18]

■ It is clear that an issuer has the right and in fact duty to require strict compliance with whatever conditions are called for in the letter of credit. In this case, the letter clearly and unambiguously calls for payment of drafts "as per Resellers Agreement." Since the letter requires presentation and delivery of "documents as specified," it was reasonable for the bank to require presentation of the referenced "Resellers Agreement." That such a document so titled was contemplated is evidenced by the clear language and the capital letters indicating the existence of a particular document. If the reference is to a non-documentary condition, it likewise would be necessary to present the document so that the bank could examine whether any written representations contained therein as to "past due accounts" triggered the payment requirement.

17. See UCC § 5–109(2) and UCP, Article 7.

18. *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230 (5th Cir.1983). The court stated: "It would be a strange rule indeed under which a

Plaintiff cites the Fifth Circuit case of *United States v. Sun Bank of Miami,* 609 F.2d 832 (5th Cir.1980) for the proposition that only presentation of the draft would be necessary. In that case, the letter of credit provided as follows:

For consideration heretofore received, we hereby establish our Irrevocable Letter of Credit in your favor for a sum, or sums, not exceeding a total of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00). Funds may be drawn hereunder by your drafts on us at sight.

The aforementioned funds are to be used and disbursed by S.D. BRULL & ASSOCIATES as supplement funds to complete the Camino Real Condominium, 105 S.W. 8th Street, Miami, Florida, and/or Cutler Club Condominium, 110th Court at S.W. 196th Street, Miami, Florida, if necessary. Our commitment under this Letter of Credit expires on October 31, 1974.

*Id.* at 832–33. However, in that case the court found the reference to required use of the funds to be ambiguous and insufficient as an "express documentary requirement." The court said:

Although the bank may have intended to limit use of the funds to the specified projects, it did not clearly require documentation of such use. Because we must resolve any ambiguity in a letter of credit against the drafter, we find reversible error in the trial court's *implied* documentary requirement ... Absent any *express* documentary requirement, the letter of credit accorded the United States the right to payment upon presentation of the sight draft alone.

*Id.* at 833 (emphasis added). By way of contrast, in the case at bar there is a specific and express requirement to pay drafts only "as per Resellers Agreement on past due accounts." The reference to Resellers Agreement constitutes a sufficiently clear documentary requirement, or a sufficiently

party can tender drafts containing defects of which it knew and yet obtain recovery on the ground that it was not advised of them." *Id.* at 238.

258

clear non-documentary requirement, which in either case would require presentation of the document for examination of the written representations contained therein. Accordingly, there is no need further to discuss the law which would be applicable if the condition were ambiguous. However, if a "Resellers Agreement" does not exist, other legal problems would be presented.

II. *Proof of Performance of Conditions*

■ It is apparent that questions of fact must yet be explored in order to decide this case. Union Bank asserts that it has "reason to believe that there is a Resellers Agreement. ..." Further, the bank disputes the allegation that NewVector submitted to it "all the documents evidencing the reseller relationship between NewVector and American Mobile," and contends that "there are other documents or understandings between NewVector and American Mobile" relating thereto. Both parties seem to want the court to disregard these factual disputes as irrelevant to the rulings of law each desire. Plaintiff wants the court to disregard an express condition which requires compliance with the Resellers Agreement and to rule as a matter of law and policy that the draft alone was sufficient. Defendant insists upon production of an apparently non existent particular document entitled "Resellers Agreement," the absence of which would justify dishonor.

It is a rare case where extrinsic facts must be explored in order to determine adequacy of performance under a letter of credit. However, in this case discovery should go forward as to whether a Resellers Agreement exists, and all of the facts and circumstances concerning the knowledge of all parties, including American Mobile, about that document. If, as plaintiff apparently contends, a particular document entitled "Resellers Agreement" is found not to exist, we must determine the reason therefor, whether by unilateral or mutual mistake of fact, or otherwise. This court may be confronted with the necessity of balancing the relative equities between an Issuer which knew at the time of drafting or issuance of the Letter that even though a Resellers Agreement was contemplated it did not then exist, versus a Beneficiary which knew at the time of receipt of the established Letter or before that it called for compliance with a condition which couldn't be met. If discovery demonstrates the non-existence of a Resellers Agreement as such, facts should be developed to establish how and why that term was included in the Letter, the knowledge of all parties relative thereto, what documents evidence the reseller relationship between NewVector and American Mobile, and what written representations and understandings were reached as to payment of the Letter in the event of past due accounts. The claims of the parties as to waiver, estoppel and knowledge of tender of non-conforming drafts also present issues of fact.

Both motions for summary judgment are denied and the case is remanded for further discovery in accordance with this opinion.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.