**COMDATA NETWORK, INC., Appellant,**

v.

**FIRST INTERSTATE BANK OF FORT DODGE, Appellee.**

**No. 91–772.**

Supreme Court of Iowa.

March 24, 1993.

Dan T. McGrevey, Fort Dodge, for appellant.

Leonard R. Holland, Dayton, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

HARRIS, Justice.

This suit against a bank was based on a letter of credit. The district court entered judgment against the bank for cash advances but not for credit card advances. The plaintiff appealed, believing the judgment too low; the bank cross-appealed, believing it too high. The court of appeals affirmed on both appeals and so do we.

Plaintiff Comdata Network, Inc. (Comdata) is a Maryland corporation engaged in money transfer services. It provides money to truckers on the road by way of (1) cash advances effected by way of form checks written by the truckers, and (2) advances effected by way of fuel purchase credit cards. Comdata has arranged with truck stops throughout the United States and Canada for check cashing and fuel purchase credit card use. When Comdata enters a business relationship with a trucking company it requires a letter of credit, bond, or some type of security deposit. This requirement is to secure repayment to Comdata of its advances made on behalf of the trucking company.

Comdata and its customers have an established procedure for implementing the services. A truck driver stops at one of the truck stops with which Comdata has arrangements, and first calls the trucking company to obtain permission to cash a check. The company, by use of a security code given the company by Comdata, then advises Comdata to authorize the transaction. The truck stop then calls Comdata separately requesting its approval. When Comdata grants approval the truck stop cashes the check.

Credit cards are treated much the same. Regarding them Comdata issues special cards and sends them to the trucking company. The company then passes out the cards to its drivers. Each truck stop with which Comdata has arrangements has a "striper machine" which verifies that a card is still operable. Following verification the truck driver uses the credit card to pay for fuel.

Comdata and C & K Transport, Inc. (C & K) had a working relationship between 1983 and 1988. In accordance with Comdata's policy, a letter of credit existed at the time of Comdata's claim. It was issued by the bank July 30, 1987, for an amount not to exceed $40,000.

For reasons that will be explained, the relationship between C & K and the defendant bank is of little or no relevance. Nevertheless, by way of background for this dispute, we mention that, in March 1987, the bank loaned C & K $722,000, secured by liens on C & K's tractors and trailers. In December 1987 C & K restructured the loan, but made no payments to the bank from January through May 1988. It is said that C & K's owners defrauded the bank by transferring assets to a different corporation, Eagle Express, while pretending to attempt to make payments. Eagle Express was comprised of C & K assets. C & K employees became Eagle Express employees. David Robson, owner and president of C & K, simply stopped doing business under the C & K name in March 1988 and began operating as Eagle Express. C & K was soon suspended by the Iowa department of transportation from doing business in Iowa. Robson continued to operate the trucks and incur charges to Comdata for a time.

Because of C & K's default the bank canceled its letter of credit, advising Comdata June 6, 1988. Comdata immediately cut off any further credit to C & K, and C & K was denied any further cash or credit card advances. C & K eventually went into bankruptcy. Comdata then demanded $21,782.52 from the bank for advances made prior to cancellation. Comdata filed this suit after the bank denied the claim.

The district court entered judgment in favor of Comdata for $8890.89, the amount of cash advances. As mentioned, the court declined to enter judgment for the credit card advances. The case is before us on further review from a court of appeals decision affirming the district court judgment.

■ I. A letter of credit is defined as "an engagement by a bank ... made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." Iowa Code § 554.5103(1)(a) (1991). Stated otherwise:

> A letter of credit properly established constitutes an enforceable obligation created by statute in the nature of a contract by the issuer ... in favor of the beneficiary.... The duty created in the letter of credit is wholly independent of the underlying contract between the issuer's customer ... and the beneficiary.

*Newvector Communications, Inc. v. Union Bank,* 663 F.Supp. 252, 254–55 (D.Utah 1987). We discussed letters of credit at some length in *First National Bank of Council Bluffs v. Rosebud Housing Authority,* 291 N.W.2d 41 (Iowa 1980), and explained:

> The key to the commercial vitality and function of a letter of credit is that the issuing bank's promise is independent of the underlying contracts, and the bank should not resort to them in interpreting a letter of credit. The respective parties are protected by careful description of the documents which will trigger payment....
>
>    . . . .
>
> [T]he strict compliance doctrine ... refers to the face of the documents, judged by the terms of credit, not to their efficacy or continued viability. This principle is codified in section 554.5114(1)....
>
> [T]he principle that the letter of credit is an independent promise as stated in section 554.5114(1) has been uniformly applied and enforced.

291 N.W.2d at 44–45 (citations omitted); *see also* White & Summers, *Uniform Commercial Code* § 18–2 at 711–12 (2d ed. 1980).

■ We apply a rule of strict compliance to terms stipulated in letters of credit. *Rosebud,* 291 N.W.2d at 45; *see also Atlas Mini Storage, Inc. v. First Interstate Bank of Des Moines,* 426 N.W.2d 686, 688 (Iowa App.1988). It is said that, "where documents are called for, determination of the issuer's duty of performance depends upon the presentation of conforming documents and not upon the factual performance or nonperformance by the parties to the underlying transaction." *Newvector,* 663 F.Supp. at 255.

■ C & K's misconduct, in other words, is not relevant to this dispute which is between Comdata and the bank. The rule is settled that

> the claim of a beneficiary of a letter of credit is not subject to [defenses normally applicable to third-party contracts]. The insurer must honor his drafts even if the insurer's customer has failed to pay agreed fees, *has defrauded the insurer,* has unequivocally repudiated, and so on.

White & Summers § 18–2, at 712–14.

II. The letter of credit issued in this case provided:

> We undertake to honor your drafts when accompanied by:
>
>    1. Your written statements certifying that C & K ... has defaulted in the performance ... of its agreement with you ... pertaining to COMCHEK SERVICE....
>
>    2. Photostatic copies of check(s) endorsed by C & K ... drivers or other authorized payees of C & K ... and paid by you.

■ Although Comdata provided two services to C & K, checking and credit card, for unknown reasons the letter of credit expressly extends its protection to checking services only; it promises nothing regarding credit card advances. Comdata is able to suggest no sound reason for expanding the letter of credit beyond what it promises. The instrument, under the foregoing authorities, is an independent one, unaffected by the other commercial

relationships that prompted its execution. The fact that Comdata furnished two services to C & K might suggest the letter of credit was inadequate to meet Comdata's needs, but this inadequacy is no ground for extending it. Certainly there is no authority authorizing a court to rewrite a letter of credit.

The trial court was correct in declining to enter judgment for credit card advances.

III. On cross-appeal the bank contends that none of the advances, including cash advances, were covered by the letter of credit. According to the bank:

> The court has taken a letter of credit issued to a specific entity and client of the bank [C & K] and broadened it to cover Robson, Eagle Express and other entities. C & K [had] ceased to function [prior to] the period of time for which Comdata seeks payment.... The bank is asked to pay for money and fuel issued (fraudulently) to other entities.

This argument ignores the principles we have discussed. Under the authorities previously cited, the bank's obligation to Comdata is unaffected by C & K's misconduct.

Even so, the contention proceeds from misunderstood facts. No part of the $8890.89 in cash was advanced to C & K's successor. As the bank itself concedes, "[t]he trial court laboriously reviewed each document submitted by Comdata, renumbered them and allowed only those that were issued to C & K and were legible." This concession is in accordance with the trial court record, and it disposes of the cross-appeal.

IV. Other contentions will not be discussed. We have considered them and found them not preserved for review or without merit.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**